# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

JAMES VICTOR HACKLER,

        Defendant-Appellant.

UNPUBLISHED
October 30, 2018

No. 338561
Gogebic Circuit Court
LC No. 2016-000251-FC

Before: SAWYER, P.J., and STEPHENS and GADOLA, JJ.

PER CURIAM.

Following a jury trial, defendant was convicted of one count of second-degree criminal sexual conduct (CSC-II), MCL 750.520c(1)(a) (victim under 13 years of age). The trial court sentenced defendant to 3 to 15 years' imprisonment. Defendant appeals as of right, and we affirm.

## I. FACTS

When the victim was between three and four years old, her mother became romantically involved with defendant. Initially, defendant was friendly, and the victim considered him to be a father figure. His demeanor changed over time as he began to more frequently consume alcohol. In 2008, when the victim was six years old, her mother went out to see a movie, leaving the victim and defendant alone in the house they all shared. Defendant, who had been drinking, began playing a pornographic film in front of the victim. The child continually averted her gaze, and defendant stopped the film after approximately five minutes. Defendant then produced a vibrator, had the victim remove her clothes, and placed the vibrator on the outside of her genitals. Defendant verbally noted that the object was too big to fit, and it was set aside. He proceeded to pull down his pants and asked the victim to grab his penis and stimulate him to ejaculation, which she did.

Defendant moved into the bathroom, and the child followed. She asked to hold defendant's penis while he urinated, and he allowed her to do so. The two then went into a bedroom, where they took off their clothes and lay on the bed together. The phone rang, and defendant hurriedly indicated that they needed to get dressed. Before the two were fully clothed, however, the victim asked if she could fit into defendant's pants while they were around his ankles. Defendant allowed her to try. While the child attempted to squeeze into the open space

-1-

in defendant's jeans, she felt his penis pressed up against her back. They then dressed, and defendant told the child not to reveal any of his actions to her mother.

The victim's mother returned home shortly thereafter. The child told her mother about the pornographic movie, and her mother promptly destroyed it. For fear of retaliation from defendant, the child did not disclose any of the other events that had occurred that day. Four years later, the victim's mother removed defendant from the household, and the child did not see him again before trial.

In 2016, the victim's grandmother began talking about defendant, which caused the victim to cry. At that point, for the first time, the victim told her mother how defendant abused her. She had told some of her friends about the abuse before, but never a family member or authority figure. The next day, the victim's mother filed a report with the sheriff's department.

Defendant was charged with one count of first-degree criminal sexual conduct (CSC-I) and one count of CSC-II. The jury found defendant not guilty of CSC-I, but convicted him of CSC-II. The trial court sentenced defendant to a period of 36 months to 15 years in prison, an upward departure of one year from the range provided by the sentencing guidelines.

## II. ANALYSIS

### A. APPOINTMENT OF EXPERT WITNESS

Defendant first argues that the trial court abused its discretion by denying his request for the appointment of an expert in the field of false memories of childhood sexual assault to testify at trial. We disagree.

Before trial, defendant filed a motion to appoint an expert witness in the field of repressed childhood memory. The trial court held that defendant had failed to establish a nexus between the facts of the case and the need for such an expert. This Court reviews a trial court's decision to deny an indigent defendant's motion for the appointment of an expert witness for an abuse of discretion. *People v Carnicom*, 272 Mich App 614, 616; 727 NW2d 399 (2006). An abuse of discretion occurs when the trial court's holding results in an outcome falling outside the range of reasonable and principled outcomes. *Id*. at 616-617.

Our Supreme Court recently addressed the issue of the appointment of an expert witness for an indigent defendant in *People v Kennedy*, ___ Mich ___; ___ NW2d ___ (No. 154445, rel'd June 29, 2018). In *Kennedy*, ___ Mich at ___; slip op at 10-11, our Supreme Court held that when considering whether, and under what conditions, the participation of an expert witness is important enough to the preparation of a defense to require the government to provide an indigent defendant with access to such an expert, the United States Supreme Court's analysis in *Ake v Oklahoma*, 470 US 68; 105 S Ct 1087; 84 L Ed 2d 53 (1985), must control. To answer that question, due process requires examination of three factors:

> (1) "the private interest that will be affected by the action of the State," (2) "the governmental interest that will be affected if the safeguard is to be provided," and (3) "the probable value of the additional or substitute procedural safeguards that

are sought, and the risk of an erroneous deprivation of the affected interest if those safeguards are not provided." [*Kennedy*, slip op at 6, quoting *Ake*, 470 US at 77.]

The *Kennedy* Court noted that although *Ake* outlined the proper due-process analysis, it did not indicate how a criminal defendant could demonstrate that he or she was entitled to expert assistance. *Id*. at ___; slip op at 17-18. If a defendant were tasked with proving in detail with a high degree of certainty that an expert would benefit the defense, it would become nearly impossible for a defendant to satisfy his or her burden. *Id*. at ___; slip op at 17, citing *People v Agar*, 314 Mich App 636, 642; 887 NW2d 662 (2016), aff'd in part, vacated in part, and rev'd in part 500 Mich 891 (2016). Simultaneously, a criminal defendant cannot be allowed access to an appointed expert at the expense of the state on the basis of nothing more than a bare assertion that one is necessary to the defense. *Kennedy*, slip op at 17-18, citing *Caldwell v Mississippi*, 472 US 320, 323 n 1; 105 S Ct 2633; 86 L Ed 2d 231 (1985). Endeavoring to strike the right balance between these two extremes, our Supreme Court adopted the following standard articulated by the United States Court of Appeals for the Eleventh Circuit:

"[A] defendant must show the trial court that there exists a reasonable probability both that an expert would be of assistance to the defense and that denial of expert assistance would result in a fundamentally unfair trial. Thus, if a defendant wants an expert to assist his attorney in confronting the prosecution's proof—by preparing counsel to cross-examine the prosecution's experts or by providing rebuttal testimony—he must inform the court of the nature of the prosecution's case and how the requested expert would be useful. At the very least, he must inform the trial court about the nature of the crime and the evidence linking him to the crime. By the same token, if the defendant desires the appointment of an expert so that he can present an affirmative defense, . . . he must demonstrate a substantial basis for the defense, as the defendant did in *Ake*. In each instance, the defendant's showing must also include a specific description of the expert or experts desired; without this basic information, the court would be unable to grant the defendant's motion, because the court would not know what type of expert was needed. In addition, the defendant should inform the court why the particular expert is necessary. We recognize that defense counsel may be unfamiliar with the specific scientific theories implicated in a case and therefore cannot be expected to provide the court with a detailed analysis of the assistance an appointed expert might provide. We do believe, however, that defense counsel is obligated to inform himself about the specific scientific area in question and to provide the court with as much information as possible concerning the usefulness of the requested expert to the defense's case." [*Kennedy*, slip op at 18-19, quoting *Moore v Kemp*, 809 F2d 702, 712 (CA 11, 1987).]

In this case, defendant's first issue on appeal asks whether the trial court abused its discretion when it denied defendant's motion to appoint an expert witness in the field of repressed childhood memory. Under the framework articulated in *Ake*, 470 US at 78-83, and *Kennedy*, ___ Mich at ___; slip op at 5-11, 17-19, we conclude that the trial court did not abuse its discretion when it denied defendant's motion.

Much like the defendant in *Ake*, 470 US at 78, defendant in this case has an immensely persuasive interest in the accuracy of a criminal proceeding that places his freedom at issue. Such an interest is not significantly tempered by the government's minimal—relative to an undisputedly indigent defendant—burden in paying the cost of acquiring the requested expert. See *id*. at 78-79. Where defendant's argument falls short, however, is that he has failed to show how an expert in the field of repressed childhood memory would be of *any* significant assistance to the proper presentation of a defense, let alone how " 'there exists a reasonable probability both that an expert would be of assistance to the defense and that denial of expert assistance would result in a fundamentally unfair trial.' " See *Kennedy*, slip op at 19, quoting *Moore*, 809 F2d at 712.

Defendant argues that an expert in the field of repressed childhood memories would aid the defense by addressing the victim's alleged tendency to fabricate or embellish details of her encounter with defendant (in which she testified that defendant sexually assaulted her multiple times when she was six years old). However, there was no indication that the victim repressed memories of defendant's abusive conduct, or any memories at all. In fact, her testimony proved otherwise. She expressly stated that she disclosed details of the abuse to her close friends. Though she did not explain when these disclosures occurred, it is apparent that the victim did not suppress or forget the incident over time. Moreover, the victim specifically stated that the reason for her failure to tell authority figures or family members of the abuse stemmed from her fear of defendant, not because she had buried the event beneath her capacity for conscious recollection.

Defendant also argues that an expert was necessary to address the misconception that abuse victims tend to wait years before disclosing details of their abuse to others. However, both the victim and her mother testified that the victim, when she was six years old, wasted no time in disclosing that defendant had, at the very least, exposed the child to a pornographic film. The victim further testified that she had, over time, disclosed the abuse to her friends before she came forward with details to her family.

In sum, even under the legal framework established under our Supreme Court's decision in *Kennedy*, defendant has failed to show that an expert in the field of repressed childhood memory would offer any relevant insight into the issues of this case. Stated another way, the risk of an inaccurate resolution of issues pertaining to whether the victim repressed memories of her abuse is extremely low (perhaps nonexistent), where the victim's testimony conclusively established that she never repressed memories of the abuse and did not wait years before disclosing at least some of the details of defendant's unlawful conduct. Contra *Ake*, 470 US at 82-83.

## B. PRIOR ACTS EVIDENCE OF DOMESTIC ABUSE

Defendant next argues that the trial court abused its discretion in denying defendant's motion to suppress evidence of defendant's previous acts of domestic violence. Again, we disagree.

A trial court's decision regarding the admissibility of other acts evidence under MRE 404(b) is reviewed for an abuse of discretion. *People v Waclawski*, 286 Mich App 634, 669-670; 780 NW2d 321 (2009), citing *People v Crawford*, 458 Mich 376, 383; 582 NW2d 785 (1998).

Generally, under MRE 404(b)(1), "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith." However, in a criminal action in which the defendant is accused of a crime involving domestic violence, evidence of defendant's previous commission of other acts of domestic violence is admissible "for any purpose for which it is relevant," so long as it is not barred by MRE 403. MCL 768.27b(1). For purposes of MCL 768.27b:

"Domestic violence" or "offense involving domestic violence" means an occurrence of 1 or more of the following acts by a person that is not an act of self-defense:

(*i*) Causing or attempting to cause physical or mental harm to a family or household member.

(*ii*) Placing a family or household member in fear of physical or mental harm.

(*iii*) Causing or attempting to cause a family or household member to engage in involuntary sexual activity by force, threat of force, or duress.

(*iv*) Engaging in activity toward a family or household member that would cause a reasonable person to feel terrorized, frightened, intimidated, threatened, harassed, or molested. [MCL 768.27b(5)(a)(*i*) through (*iv*).]

A " '[f]amily or household member' " includes individuals with whom the defendant resides or has resided. MCL 768.27b(5)(b)(*ii*). This Court has previously held that a charge of CSC-I qualifies as an offense involving domestic violence under MCL 768.27b, even where the alleged conduct against a minor did not involve the use of force. *People v Pattison*, 276 Mich App 613, 615-617; 741 NW2d 558 (2007). In *Pattison*, the defendant was charged with CSC-I when he used manipulation and abuse of parental authority to gain sexual favors from his daughter. *Id*. at 617.

In this case, it was established that defendant resided with the victim at the time of the offense. Accordingly, the victim was a "household member." MCL 768.27b(5)(b)(*ii*). Moreover, although it appears that defendant did not use force, threats of force, or duress, the victim's testimony shows that defendant manipulated her youth and innocence and abused his status as a father figure in order to engage in sexual activity with her when she was six years old. MCL 768.27b(5)(a)(*iii*). Though *Pattison*, 276 Mich App at 615-616, involved a defendant and his biological daughter, this Court's reasoning in that case is equally applicable to these circumstances. Further, defendant's actions surely resulted in the victim experiencing mental harm or the fear of harm, as evinced by her need to attend counseling and for special accommodations at trial, and by the fact that she did not report the abuse because she was afraid of defendant. MCL 768.27b(5)(a)(*i*) and (*ii*). Finally, defendant's conduct in exposing the victim to pornography, asking her to undress, touching her with a phallic sex toy, soliciting her to stimulate him to ejaculation, and having her lie in bed with him while nude would undoubtedly "cause a reasonable person to feel terrorized, frightened, intimidated, threatened, harassed, or molested." MCL 768.27b(5)(a)(*iv*). Accordingly, although defendant was charged

with criminal sexual conduct, the alleged conduct constituted an act of domestic violence within the meaning of MCL 768.27b.  See MCL 768.27b(5)(a)(*i*), (*ii*), (*iii*), and (*iv*).

Having established that this case involves conduct constituting domestic violence against a household member, evidence of defendant's history of domestic violence is admissible "for any purpose for which it is relevant," so long as it is not barred by MRE 403.  See MCL 768.27b(1).  Under MRE 403, even relevant evidence may be excluded "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."  The balancing test of MRE 403 requires analysis of two separate inquiries.  *People v Cameron*, 291 Mich App 599, 611; 806 NW2d 371 (2011).  Under the first, the reviewing court must determine whether the introduction of the defendant's prior bad acts evidence was unfairly prejudicial.  *Id*.  Second, the court must weigh the probative value or relevance of the evidence against the danger of unfair prejudice.  *Id*.

With regard to the first inquiry, MRE 403 does not bar all prejudicial evidence.  *Crawford*, 458 Mich at 398.  Rather, it only prohibits evidence that is *unfairly* prejudicial.  *Id*.  The "unfair prejudice" language in MRE 403 "refers to the tendency of the proposed evidence to adversely affect the objecting party's position by injecting considerations extraneous to the merits of the lawsuit, e.g., the jury's bias, sympathy, anger, or shock."  *Id*. (quotation marks omitted), quoting *People v Fisher*, 449 Mich 441, 452; 537 NW2d 577 (1995).  Further, "[e]vidence is unfairly prejudicial when there exists a danger that marginally probative evidence will be given undue or preemptive weight by the jury."  *Crawford*, 458 Mich at 398.  In this case, the prosecution repeatedly called attention to defendant's history of domestic violence.  Therefore, there was at least some prejudicial effect created by introduction of defendant's prior bad acts.  However, the trial court minimized the prejudicial effect by instructing the jury not to render its verdict solely on the basis of such evidence.  See *Cameron*, 291 Mich App at 612.  "Jurors are presumed to follow their instructions, and instructions are presumed to cure most errors."  *People v Abraham*, 256 Mich App 265, 279; 662 NW2d 836 (2003).

Turning to the second inquiry, the trial court correctly stated that the prior acts evidence was probative of defendant's propensity to engage in criminal misconduct when he drinks.  The evidence was also probative in that it bolstered the victim's credibility when she stated that defendant had committed the offense after drinking.  See *Cameron*, 291 Mich App at 612.  Moreover, any remaining prejudice left uncured by the trial court's limiting instruction was further reduced by the fact that this case is not factually analogous to the prior incidents of domestic violence in the slightest.  See *People v Meissner*, 294 Mich App 438, 452; 812 NW2d 37 (2011).  None of the previous cases involved the same victim, nor did they involve sexual misconduct.  The only similarity between this case and at least some of the previous incidents is that defendant had been drinking before committing each offense.  For these reasons, the prejudicial effect of defendant's previous domestic violence offenses did not outweigh the probative value of the evidence.  Accordingly, the trial court did not abuse its discretion when it allowed this evidence to be introduced to the jury under MCL 768.27b.  See *Meissner*, 294 Mich App at 452.

## C. PRODUCTION OF PRIVILEGED RECORDS

Defendant next takes the position that the trial court abused its discretion by denying his multiple attempts to garner the victim's psychological records. We are not persuaded that defendant demonstrated the requisite good-faith belief, established by reference to specific, articulable facts, that such records contained material information necessary to the defense.

This Court reviews a trial court's determination to conduct or deny an *in camera* review of privileged records in a criminal prosecution for an abuse of discretion. *People v Davis-Christian*, 316 Mich App 204, 207; 891 NW2d 250 (2016).

Criminal defendants have a due-process right to obtain evidence within the prosecutor's possession if it is "favorable to the accused and material to guilt or innocence." *People v Laws*, 218 Mich App 447, 452; 554 NW2d 586 (1996). That aside, "there is no right to discover information or evidence that is protected from disclosure by . . . privilege." MCR 6.201(C)(1). However, "[i]f a defendant demonstrates a good-faith belief, grounded in articulable fact, that there is a reasonable probability that records protected by privilege are likely to contain material information necessary to the defense, the trial court shall conduct an in camera inspection of the records." MCR 6.201(C)(2). Following an *in camera* inspection, if the trial court determines that the records reveal evidence necessary to the defense, the trial court will direct that the evidence be made available to defense counsel. MCR 6.201(C)(2)(b). In a CSC prosecution, an *in camera* review facilitates the protection of the alleged victim's privacy rights while safeguarding the fair trial guarantees defendant is entitled to. *Davis-Christian*, 316 Mich App at 208.

Criminal defendants have no general right to discovery. *People v Stanaway*, 446 Mich 643, 680; 521 NW2d 557 (1994), citing MCR 6.001. Determinations as to the scope of discovery in criminal cases are left within the discretion of the trial court. *Stanaway*, 446 Mich at 680. Typically, discovery of privileged information should be precluded where the record reflects that a party seeking disclosure "is on 'a fishing expedition to see what may turn up.' " *Id*., quoting *Bowman Dairy Co v United States*, 341 US 214, 221; 71 S Ct 675; 95 L Ed 879 (1951). That is, a party may not seek disclosure of privileged information where it relies on generalized assertions without reference to any specific, articulable fact that indicates the privileged records are needed to prepare a defense. *Davis-Christian*, 316 Mich App at 208.

The *Stanaway* Court split its analysis between the two defendants in that case, defendant Stanaway and defendant Caruso. The Court rejected defendant Stanaway's attempt to garner privileged evidence where the records were purportedly sought "to unearth any prior inconsistent statements made by the complainant or any other relevant rebuttal evidence." *Stanaway*, 446 Mich at 681-682. The Court saw through this characterization and held that such assertions were mere attempts to circumvent privilege to obtain evidence potentially useful for impeachment or cross-examination. *Id*. These needs "*might exist in any case involving an accusation of criminal sexual conduct*," and so recognizing an exception to otherwise absolute privilege for such purposes would swallow the protections intended for victims' privacy. *Id*. (emphasis added). However, the Court did not outright reject defendant Caruso's request for *in camera* review where he argued that a psychological evaluation pertaining to a victim of alleged CSC was relevant to the truth or falsity of the claim. *Id*. at 682. In particular, defendant Caruso asserted a

good-faith belief that the victim was falsely accusing him of CSC, specifically pointing to the victim's troubled childhood; previous, unresolved abuse by her father; and her own sexually aggressive behavior. *Id*. at 682-683. The Court remanded the case to the trial court to establish a record of the trial court's reasons behind granting defendant Caruso's request for *in camera* review. *Id*. at 683.

In this case, defendant's purported reasons for seeking an *in camera* review of the victim's psychological records—and ultimately their disclosure to the defense—are more analogous to the reasons proffered by defendant Stanaway. See *id*. at 681-682. Defendant merely asserted that the records were subject to disclosure under MCR 6.201 because of his belief that the victim had embellished the truth of the incident and that the records might disclose any inconsistencies in her story. In essence, defendant sought evidence with which to impeach the child or to establish prior inconsistent statements. Defendant has repeatedly failed to point to any specific, articulable fact indicating his good-faith belief that the records were necessary to his defense. Rather, he has offered a generalized desire for the documents that any defendant accused of CSC would share. See *Stanaway*, 446 Mich at 681. Without more, defendant is embarking on a "fishing expedition" that does not satisfy the requirements of MCR 6.201(C)(2). See *Stanaway*, 446 Mich at 681; *Davis-Christian*, 316 Mich App at 212-213. The trial court therefore did not abuse its discretion when it denied defendant's motion to compel disclosure of the victim's psychological records. See *Stanaway*, 446 Mich at 681-682.

## D. DEPARTURE FROM SENTENCING GUIDELINES

Defendant lastly asserts that the trial court abused its discretion by imposing a minimum sentence that exceeded the recommended guidelines range by one year, in violation of the principle of proportionality. We disagree.

This Court reviews an upward departure from the sentencing guidelines range for reasonableness. *People v Lockridge*, 498 Mich 358, 365; 870 NW2d 502 (2015). "[T]he standard of review to be applied by appellate courts reviewing a sentence for reasonableness on appeal is abuse of discretion." *People v Steanhouse*, 500 Mich 453, 471; 902 NW2d 327 (2017) (*Steanhouse II*). A sentence is unreasonable—and therefore an abuse of discretion—if the trial court failed to adhere to the principle of proportionality in imposing its sentence on a defendant. *Id*. at 477, citing *People v Milbourn*, 435 Mich 630, 636; 461 NW2d 1 (1990).

The Michigan Supreme Court, in *Steanhouse II*, 500 Mich at 471, reaffirmed the principle of proportionality test articulated in *Milbourn*. That is,

> a judge helps to fulfill the overall legislative scheme of criminal punishment by taking care to assure that the sentences imposed across the discretionary range are proportionate to the seriousness of the matters that come before the court for sentencing. In making this assessment, the judge, of course, must take into account the nature of the offense and the background of the offender. [*Milbourn*, 435 Mich at 651.]

The sentencing court must also consult and account for the guidelines, which " 'remain a highly relevant consideration in a trial court's exercise of sentencing discretion.' " *Steanhouse II*, 500 Mich at 474-475, quoting *Lockridge*, 498 Mich at 391.

In implementing the principle of proportionality, " 'the key test is whether the sentence is proportionate to the seriousness of the matter, not whether it departs from or adheres to the guidelines' recommended range.' " *Steanhouse II*, 500 Mich at 472, quoting *Milbourn*, 435 Mich at 661. Factors that may be considered under the test include, but are not limited to:

> (1) the seriousness of the offense; (2) factors that were inadequately considered by the guidelines; and (3) factors not considered by the guidelines, such as the relationship between the victim and the aggressor, the defendant's misconduct while in custody, the defendant's expressions of remorse, and the defendant's potential for rehabilitation. [*People v Steanhouse*, 313 Mich App 1, 46; 880 NW2d 297 (2015) (*Steanhouse I*), aff'd in part and rev'd in part on other grounds 500 Mich 453 (2017) (citations omitted).]

In this case, the trial court justified the departure sentence imposed on defendant by noting: (1) defendant's 21 prior misdemeanor convictions at the age of 39; (2) defendant's struggle with alcohol abuse since at least 1997; (3) defendant's outstanding warrants with regard to driving under the influence and writing bad checks; (4) the "horrendous" nature of defendant's crime and the age of the victim at the time of the incident; (5) the lifelong effect that defendant's conduct has had on the victim; and (6) that, while defendant was convicted of only one count of CSC-II, he engaged in four separate acts that each individually constituted CSC-II. Additionally, the trial court stated that offense variable (OV) 10 (exploitation of a vulnerable victim) did not adequately account for the victim's age at the time of the incident or for the domestic relationship between the child and her abuser.

First, we note that the trial court, in imposing the departure sentence, relied in part on the victim's testimony that defendant engaged in at least four separate criminal acts, while he was convicted of only one count of CSC-II. However, while OV 12 (contemporaneous felonious criminal acts), MCL 777.42, and OV 13 (continuing pattern of criminal behavior), MCL 777.43(c), could have addressed this discrepancy, no points were allotted under either of these variables. Accordingly, it cannot be said that the guidelines inadequately accounted for the additional criminal acts. See *People v Dixon-Bey*, 321 Mich App 490, 527; 909 NW2d 458 (2017).

Some of the trial court's additional justifications for departing from the guidelines are also at least partially contemplated by scoring variables. For example, the victim's age and the domestic relationship she shared with defendant are accounted for by the guidelines. See MCL 777.40(1)(b). OV 10 is to be assessed at 10 points when "[t]he offender exploited a victim's . . . youth . . . , or a domestic relationship, or the offender abused his or her authority status." *Id*. However, the trial court found that OV 10 did not adequately account for the particular circumstances of this case. Defendant manipulated a six-year-old into participating in acts of a sexual nature by exploiting her naivety and his status as an authority figure in the child's life. Factual distinctions can justify upward departures when the trial court feels that the guidelines do

not adequately account for the offenses at bar. *People v Walden*, 319 Mich App 344, 353-354; 901 NW2d 142 (2017) (the trial court properly justified an upward departure on the basis of the defendant's commission of a homicide by means of assault while on bond for aggravated assault, notwithstanding that these facts were to some extent addressed by prior record variable 6 (relationship to criminal justice system)).

The long-term effect of defendant's crime on the victim is also somewhat accounted for under OV 4 (psychological injury to victim), which is assessed 10 points when "[s]erious psychological injury requiring professional treatment occurred to a victim." MCL 777.34(1)(a). In this case, defendant was assessed 10 points under OV 4. However, this offense variable is sometimes inadequate to address the abhorrent nature of the crimes committed. *People v Kahley*, 277 Mich App 182, 190-191; 744 NW2d 194 (2007). In *Kahley*, this Court held that an upward departure was warranted where evidence suggested that the defendant performed sexual acts on four-year-old and five-year-old children, including his son. *Id*. at 190. The multiple acts performed by defendant in this case on a defenseless six-year-old clearly warrant a departure as well. See *id*. at 190-191. Moreover, OV 4 does not address the *long-term* ramifications of defendant's behavior on this young victim.

The extent of a defendant's criminal history relative to his or her age is also a relevant consideration in justifying an upward departure from the guidelines. *Walden*, 319 Mich App at 354. Prior record variable (PRV) 5 (prior misdemeanor convictions), MCL 777.55, accounts for a defendant's history of misdemeanor convictions before the instant offense; indeed, defendant was assessed the requisite 20 points under PRV 5. However, PRV 5 does not account for a defendant's youth or agedness in accumulating such criminal history. See *Walden*, 319 Mich App at 353-355. Moreover, the highest score possible under PRV 5—20 points—is applicable when the defendant has "7 or more prior misdemeanor convictions . . . ." MCL 777.55(1)(a). Defendant's 21 prior misdemeanor convictions far exceeded this ceiling, resulting in a guidelines recommendation that failed to account for defendant's additional 14 prior misdemeanor convictions. Ergo, it was appropriate for the trial court to justify an upward departure, in part, on the basis of defendant's lengthy criminal history despite his relatively young age. See *Dixon-Bey*, 321 Mich App at 525-526; *Walden*, 319 Mich App at 354.

A history of repeated alcohol abuse—even where it is partly addressed by scoring variables—may also justify an upward departure. In this case, defendant has admittedly abused alcohol since at least 1997. Although he has been previously convicted of operating while intoxicated, MCL 257.625(1), and operating while visibly impaired, MCL 257.625(3), this does not address the underlying problem: nearly two decades of alcohol abuse. Defendant also escaped prosecution of yet another instance of operating while intoxicated, apparently because he was already in jail for domestic violence. Such charges, even when they are not ultimately prosecuted, are relevant to determinations whether to depart from the sentencing guidelines. See *Walden*, 319 Mich App at 354.

A record of outstanding bench warrants is another valid consideration when considering a departure from the guidelines. *People v Harper*, 479 Mich 599, 638; 739 NW2d 523 (2007). Defendant had four outstanding bench warrants pending at the time of trial. Furthermore, as previously discussed, the egregiousness of the offense is also a valid consideration. *Steanhouse I*, 313 Mich App at 46. Defendant was convicted of CSC-II after engaging in sexual activities

multiple times in one day with a six-year-old who resided with him and viewed him as a father figure. The egregiousness of such an offense is difficult to overstate, and clearly supports the trial court's decision to depart from the recommended sentencing guidelines range.

"A sentence cannot be upheld when the connection between the reasons given for departure and the extent of the departure is unclear." *People v Smith*, 482 Mich 292, 304; 754 NW2d 284 (2008); see also *People v Steanhouse (On Remand)*, 322 Mich App 233, 239; 911 NW2d 253 (2017) (*Steanhouse III*). Although the trial court did not explicitly discuss why the particular departure of one year was chosen, the connection between the reasons provided for the departure and the extent of the departure are clear from the record. See *Smith*, 482 Mich at 304; *Walden*, 319 Mich App at 355. The three-year minimum sentence imposed, which exceeded the guidelines range by a relatively modest 12 months, does not violate the principle of proportionality.

Affirmed.

/s/ David H. Sawyer
/s/ Michael F. Gadola