*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

STEPHEN MICHAEL MYERS,

Defendant-Appellant.

UNPUBLISHED
June 13, 2019

No. 342098
Oakland Circuit Court
LC No. 2016-261073-FC

Before: SAWYER, P.J., and O'BRIEN and LETICA, JJ.

PER CURIAM.

Defendant appeals as of right his jury-trial convictions for first-degree criminal sexual conduct (CSC I), MCL 750.520b, and two counts of second-degree criminal sexual conduct (CSC II), MCL 750.520c. He was sentenced to 30 to 60 years' imprisonment for the CSC I conviction and 10 to 15 years' imprisonment for the CSC II convictions. We affirm.

This case arose from allegations that defendant sexually abused his then 11-year-old adopted daughter. Defendant previously pleaded no contest to two counts of CSC II for sexually abusing the complainant's older sister, AM, from 2009 to 2012. AM disclosed the abuse in 2012 when she was 16 years old. At that time, the complainant denied that she had been molested. Later, in February 2016, the complainant disclosed that she had also been abused.

## I. EVIDENCE OF PRIOR SEXUAL ABUSE OF A MINOR

Defendant first argues that the trial court erred by admitting evidence of defendant's prior sexual abuse of AM under MCL 768.27a. That statute provides, in relevant part, that "in a criminal case in which the defendant is accused of committing a listed offense against a minor,[1] evidence that the defendant committed another listed offense against a minor is admissible and

---

[1] This includes "various forms of criminal sexual conduct," *People v Dobek,* 274 Mich App 58, 88 n 16; 732 NW2d 546 (2007), including the crimes at issue here.

may be considered for its bearing on any matter to which it is relevant." MCL 768.27a. We review for an abuse of discretion a trial court's decision to admit or exclude evidence. *People v McGhee*, 268 Mich App 600, 636; 709 NW2d 595 (2005).

"In cases involving the sexual abuse of minors, MCL 768.27a now allows the admission of other-acts evidence to demonstrate the likelihood of a defendant's criminal sexual behavior toward other minors." *People v Buie*, 298 Mich App 50, 71-72; 825 NW2d 361 (2012) (quotation marks and citation omitted). MCL 768.27a supersedes MRE 404(b) where applicable, but evidence admissible under MCL 768.27a may still be excluded under MRE 403. *People v Watkins,* 491 Mich 450, 477, 481; 818 NW2d 296 (2012). MRE 403 provides that relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Unfair prejudice occurs when there is a tendency for the evidence "to be given undue or preemptive weight" by the jury, or when it "would be inequitable to allow use" of the evidence. *People v Wilson*, 252 Mich App 390, 398; 652 NW2d 488 (2002). Evidence that is unfairly prejudicial goes beyond the merits of the case to inject issues broader than the defendant's guilt or innocence, such as "bias, sympathy, anger, or shock." *McGhee*, 268 Mich App at 614.

Defendant argues that evidence of his sexual abuse of AM should have been excluded because it was substantially more prejudicial than probative. In denying defendant's motion to exclude the evidence, the trial court noted that the evidence was relevant because it tended to establish a pattern, scheme or design. The trial court also reasoned that the existence of this pattern, scheme or design "would make the allegations in this case more credible." The trial court concluded that the probative value of the evidence—its tendency to demonstrate a common scheme and to corroborate the complainant's report—was not substantially outweighed by its prejudicial effect.

"MCL 768.27a specifically *permits* the use of other-acts evidence to show a defendant's propensity to commit the charged crime" while "bolster[ing] the complainant's credibility." *Watkins*, 491 Mich at 492 n 93. When MCL 768.27a is at issue, the propensity aspect of the evidence weighs in favor of the evidence's probative value rather than its prejudicial effect. *Id*. at 486-487, 497. In *Watkins,* 491 Mich at 487-488, our Supreme Court enumerated several considerations that might lead a court to exclude evidence as unfairly prejudicial under MRE 403:

> (1) the dissimilarity between the other acts and the charged crime, (2) the temporal proximity of the other acts to the charged crime, (3) the infrequency of the other acts, (4) the presence of intervening acts, (5) the lack of reliability of the evidence supporting the occurrence of the other acts, and (6) the lack of need for evidence beyond the complainant's and the defendant's testimony.

Here, none of the considerations from *Watkins* weigh in favor of excluding the other-acts evidence. The other acts were similar to the sexual abuse alleged by complainant: at least one event occurred in the same household, in the same place, and in the same manner. The other acts against AM occurred within the same timeframe as the acts alleged by the complainant. The other acts against AM occurred with relative frequency, and there were no intervening acts

between the acts against AM and the acts at issue in the case. The other acts described by AM were highly reliable because defendant admitted to them. And lastly, AM's testimony about the other acts was needed; defendant's theory was that the complainant manufactured the allegations, which defendant supported by pointing to a forensic interview in which the complainant told the interviewer that defendant did not act inappropriately to her. Thus, none of the factors discussed in *Watkins* suggest that AM's testimony was unfairly prejudicial under MRE 403. Moreover, there is nothing to suggest that admitting the other-acts evidence injected issues broader than the defendant's guilt or innocence. See *McGhee*, 268 Mich App at 614. Nor is there anything to suggest that the other-acts evidence would confuse the issues, mislead the jury, create undue delay, or waste time. See MRE 403.

In sum, the other-acts evidence was strongly probative because it demonstrated the likelihood that the complainant was being truthful in reporting defendant's sexual abuse while "bolster[ing] the complainant's credibility," *Watkins*, 491 Mich at 492 n 93, and it tended to suggest that defendant had a propensity for sexually abusing minors in his care. This evidence, like all relevant evidence, was prejudicial. But this prejudice did not substantially outweigh the evidence's high probative value, so the trial court did not abuse its discretion by admitting the evidence.

## II. RIGHT TO COUNSEL

Defendant next argues that he was denied his right to counsel when the trial court initially refused to appoint him successor counsel after he complained about his relationship with his counsel. We review for an abuse of discretion a trial court's decision whether to substitute counsel. *People v Strickland*, 293 Mich App 393, 397; 810 NW2d 660 (2011).

At a pretrial hearing, defendant requested substitute counsel because he had "a conflict of interest with [his] attorney." Defendant also relayed that his family had begun looking for attorneys to sue his counsel for "misrepresentation and legal malpractice." Defense counsel replied that she did not object to substitution but had "no idea" what defendant was talking about. The trial court denied defendant's request. At the next hearing, defense counsel informed the court that defendant still wanted substitute counsel. Defense counsel explained that defendant believed that she had done nothing for him, despite that she had visited him multiple times and provided discovery materials that she had discussed with him. Defendant then reiterated to the trial court that he wanted different counsel appointed because he allegedly had only spoken to his counsel twice and had requested that she contact a possible witness, which she did not do. Before appointing substitute counsel, the trial court ensured that defendant understood that any delay would be attributed to him. After defendant stated that he understood, the trial court appointed successor counsel.

A defendant's right to counsel is guaranteed by the United States and Michigan Constitutions. US Const, Am VI; Const 1963 art 1, § 20.[2] A defendant is denied this right to

---

[2] Defendant appears to contend that he was denied his right to counsel from the time that he requested new counsel in February 2017 until new counsel was appointed in April 2017.

counsel when the trial court erroneously denies the defendant the counsel of his choice. *United States v Gonzalez-Lopez*, 548 US 140, 146; 126 S Ct 2557; 165 L Ed 2d 409 (2006). But when the defendant is indigent and receiving counsel at public expense, the defendant is not entitled to choose his attorney. *People v Ackerman*, 257 Mich App 434, 456; 669 NW2d 818 (2003).

The appointment of a substitute counsel for an indigent defendant "is warranted only upon a showing of good cause and where substitution will not unreasonably disrupt the judicial process." *Strickland*, 293 Mich App at 397. "Good cause exists where a legitimate difference of opinion develops between a defendant and his appointed counsel with regard to a fundamental trial tactic." *People v McFall*, 309 Mich App 377, 382-383; 873 NW2d 112 (2015). "When a defendant asserts that the defendant's assigned attorney is not adequate or diligent, or is disinterested, the trial court should hear the defendant's claim and, if there is a factual dispute, take testimony and state its findings and conclusion on the record." *Strickland*, 293 Mich App at 397.

When defendant first brought his concerns about his assigned counsel to the trial court's attention, the trial court should have heard defendant's claim. See *id*. We therefore agree with defendant that, in this respect, the trial court erred. But "[a] judge's failure to explore a defendant's claim that his assigned lawyer should be replaced does not necessarily require that a conviction following such error be set aside." *People v Ginther*, 390 Mich 436, 442; 212 NW2d 922 (1973). When the issue was brought to the trial court's attention a second time, the trial court heard defendant's concerns and ultimately granted defendant's request for substitute counsel. Thus, the ruling that defendant is challenging was ultimately granted in his favor,[3] and we detect no error warranting reversal.

## III. PROSECUTORIAL ERROR

Defendant next argues that the prosecutor committed misconduct by not providing notice that a witness would testify with a service dog and by asking defendant to comment on the credibility of AM. Defendant failed to preserve these claims of prosecutorial misconduct by contemporaneously objecting and requesting a curative instruction. See *People v Solloway*, 316 Mich App 174, 201; 891 NW2d 255 (2016). "Unpreserved claims of prosecutorial misconduct are reviewed for plain error affecting substantial rights." *People v Norfleet*, 317 Mich App 649, 660 n 5; 897 NW2d 195 (2016). To warrant relief under this standard, defendant must show that: (1) an error occurred; (2) the error was plain, i.e., clear and obvious; and (3) the plain error

---

However, at no point during that time was defendant without representation, so we conclude that defendant was not denied his right to counsel.

[3] Defendant complains that the trial court's delay in granting his request for substitute counsel delayed his trial date from April 2017 until November 2017, and he makes reference to the 180-day rule. See MCL 780.131. Defendant does not allege that the 180-day rule was violated, nor does he explain how this delay constituted reversible error. We therefore consider the argument abandoned. See *People v Kevorkian*, 248 Mich App 373, 389; 639 NW2d 291 (2001).

affected defendant's substantial rights. *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999).

The prosecutor has a duty to ensure that the defendant receives a fair trial. *People v Farrar*, 36 Mich App 294, 299; 193 NW2d 363 (1971). The responsibility of a prosecutor is "to seek justice and not merely convict." *People v Dobek*, 274 Mich App 58, 63; 732 NW2d 546 (2007). "[T]he test of prosecutorial misconduct is whether a defendant was denied a fair and impartial trial." *Id*. A fair trial for a defendant "can be jeopardized when the prosecutor interjects issues broader than the defendant's guilt or innocence." *Id*. at 63-64.

Defendant alleges that the prosecutor committed misconduct when she failed to inform the trial court and defendant that defendant's wife intended to testify with a service animal. As defendant's wife began to testify, the trial court dismissed the jury so it could make a record about the dog that appeared with the witness. The prosecutor explained to the court that, on the morning of the trial, she became aware that the witness intended to have the dog accompany her during her testimony. The witness claimed that the dog had a service animal identification card issued by a federal organization, and explained that she was disabled and that the American's with Disabilities Act (ADA), 42 USC 12101, *et seq.*, permitted the service dog to enter facilities as an accommodation for her disability. The witness told the trial court that she had been diagnosed with diabetes, thyroid issues, and panic attacks, that her physician had verbally authorized a service animal for her to take everywhere she goes, and that she would have panic attacks without the dog present. The trial court stated that it had accommodated people with disabilities in the past, but, without notice, it could not take the time to determine whether a legitimate agency issued the certification card, and it did not know whether diabetes or panic disorder were disabilities. The trial court wanted to ensure that the jury did not reach any wrong conclusions as a result of the service animal, so it instructed the prosecutor to elicit testimony from the witness in front of the jury that the dog was a service animal for her disabilities and that she took it everywhere.

In support of his argument that the prosecution engaged in misconduct, defendant relies on *People v Shorter*, 324 Mich App 529, 542; 922 NW2d 628 (2018), where this Court held "that a fully abled adult witness may not be accompanied by a support animal or support person while testifying." But the *Shorter* Court explicitly declined to address whether the prosecutor committed misconduct by failing to give notice of the support animal. See *id*. at 537 n 3. Defendant does not explain how *Shorter* is relevant to whether the prosecutor committed misconduct, and instead focuses entirely on whether it was error to allow defendant's wife to testify with a service animal.

Nonetheless, we conclude that the prosecution did not commit misconduct by failing to inform defendant before trial of the witness's use of the service animal. We first note that the holding of *Shorter* is not applicable here because at issue is the use of a service animal, not a support animal. The witness testified, and the jury was informed, that the witness had a disability requiring the use of a service dog—the witness was not using the dog for emotional support. Compare *id*. at 536. The dog presented with identification showing that it was an animal in the service of the accompanying person's disability. Additionally, the witness using the service animal was not the complaining witness, and the case did not turn on her credibility. Compare *id*. at 541-542 (explaining that the witness with the support animal was the

complaining witness, and that the case "turned almost exclusively on" her credibility). The witness provided contextual testimony that did not obviously favor either party. Moreover, despite the lack of notice, the trial court was able to inquire about the use of the service dog before deciding whether it was appropriate for the witness to testify with the animal. After making its inquiry, the trial court allowed the witness to explain to the jury that she required a service animal for her disability, and that it was not for emotional support. In light of this explanation, the jury was not likely to view the witness's testimony any more favorably because she was accompanied by a service animal. And because the witness's medical issues were not related to any issues involved in the case, the presence of the dog would not deprive the jury of determining her credibility. In sum, the prosecutor did not deprive defendant of a fair trial by failing to inform defendant before trial of the witness's use of the service animal, so the prosecutor did not commit misconduct.[4]

Defendant asserts, alternatively, that defense counsel was ineffective for not objecting to the prosecutor's alleged misconduct.[5] Because we conclude that the prosecutor did not commit misconduct, defense counsel was not ineffective for not objecting. See *People v Agar*, 314 Mich App 636, 656-657; 887 NW2d 662 (2016) (explaining that trial counsel is not required to make frivolous or meritless objections).

Defendant next argues that the prosecutor committed misconduct by asking defendant about the credibility of other witnesses. At issue is the prosecutor's questioning of defendant during cross-examination. She first asked defendant whether he heard AM's testimony describing defendant's sexual abuse of her. After defendant affirmed, the prosecutor asked, "[A]nd you agree that's the truth and that happened?" Defendant responded affirmatively. The prosecutor summarized her questions to defendant about AM by asking, "So today as you're testifying, you're saying that [AM] stood before this jury and [AM] told the truth about everything that happened to her body by you, right?" After defendant confirmed, the prosecutor asked, "And you're saying that [the complainant] sat before these 14 people and lied?" Defendant again responded affirmatively.

---

[4] Briefly addressing defendant's argument that it was error for the witness to testify with a service animal, we first note that *Shorter* is not controlling because, again, at issue here is a service animal, not a support animal. Still, assuming that it was error for the witness to testify with a service animal, the error was harmless. When determining whether an error was harmless, the focus is on the nature of the error "in light of the weight and strength of the untainted evidence." *People v Mateo*, 453 Mich 203, 215; 551 NW2d 891 (1996). Defendant was convicted of CSC I and II, the factual basis for which was the complainant's testimony. The complainant's credibility was bolstered by AM's testimony, and neither AM's testimony nor the complainant's testimony was bolstered by defendant's wife's testimony. Thus, the complainant's testimony and AM's testimony were "untainted," and that evidence amply supported defendant's convictions.

[5] Defendant does not argue that defense counsel was ineffective for not objecting to the witness's use of a service animal.

-6-

Questions that ask a witness to comment or provide an opinion on the credibility of a witness are improper because "matters of credibility are to be determined by the trier of fact." *People v Buckey*, 424 Mich 1, 16-17; 378 NW2d 432 (1985) (citations and internal quotation marks omitted); see also *People v Malone*, 180 Mich App 347, 361; 447 NW2d 157 (1989) ("The prosecutor's question was inappropriate because it improperly bolstered the credibility of a prosecution witness."). Because credibility matters are to be determined by the jury, it is generally improper for a witness to provide an opinion on the credibility of another witness. *People v Douglas*, 496 Mich 557, 583; 852 NW2d 587 (2014); *Dobek*, 274 Mich App at 71.

The prosecutor's questions during her cross-examination of defendant were improper. However, they did not deny defendant a fair trial. The jury had already been informed that defendant had pleaded no contest to criminal sexual assaults of AM, and he affirmed on direct examination that the conduct that she described in her testimony resulted in his arrest and no contest plea. Thus, the jury was already aware that defendant did not dispute AM's testimony, and his testimony on cross-examination did not bolster her credibility because the substance had been admitted earlier. Additionally, on direct examination, defendant had denied any sexual contact with the complainant, and he pleaded not guilty to the charges for which he was being tried based on her testimony. Thus, defendant's testimony on cross-examination that the complainant's allegations were untrue was not new information. Thus, while the prosecutor's questions were improper, we conclude that they do not rise to the level of prosecutorial misconduct because they did not deny defendant a fair and impartial trial.

Defendant again argues that his trial counsel was ineffective for failing to object to the prosecutor's improper questions. But, again, because we conclude that the prosecutor's questioning did not rise to the level of prosecutorial misconduct, defense counsel was not ineffective for not objecting. See *Agar*, 314 Mich App at 656-657.

Moreover, given that defendant had already testified that he did not dispute AM's allegations and given that he obviously did dispute the complainant's allegations, it may have been trial strategy to not object to general questions about the credibility of those witnesses. See *People v Heft*, 299 Mich App 69, 83; 829 NW2d 266 (2012) (explaining that trial counsel has wide discretion regarding trial strategy "because counsel may be required to take calculated risks to win a case"). There is a strong presumption that trial counsel's performance was strategic, *People v Unger*, 278 Mich App 210, 242; 749 NW2d 272 (2008), and defendant bears the burden of overcoming this presumption, *People v Horn*, 279 Mich App 31, 39; 755 NW2d 212 (2008). It appears that part of defendant's trial strategy was to demonstrate that he was consistently truthful about activities with AM, so the jury should infer that he would be truthful about his activities with the complainant. A court cannot substitute its judgment for that of trial counsel concerning matters of trial strategy. *People v Payne*, 285 Mich App 181, 190; 774 NW2d 714 (2009).

But even if it was objectively unreasonable for defense counsel to not object to the prosecutor's improper questioning, the jury knew that defendant disputed the complainant's testimony but not AM's allegations, so his response to the prosecutor's improper questions was not outcome-determinative. See *People v Trakhtenberg*, 493 Mich 38, 51; 826 NW2d 136 (2012) (explaining that to prevail on an ineffective assistance claim, a defendant must show that

but for counsel's performance, "there is a reasonable probability that the outcome would have been different"). Thus, defendant has failed to establish this claim of ineffective assistance.

## IV. SENTENCING

For defendant's final issue on appeal, he argues that his departure sentence was unreasonable. "A sentence that departs from the applicable guidelines range will be reviewed by an appellate court for reasonableness." *People v Lockridge*, 498 Mich 358, 392; 870 NW2d 502 (2015). "[T]he standard of review to be applied by appellate courts reviewing a sentence for reasonableness on appeal is abuse of discretion." *People v Steanhouse*, 500 Mich 453, 471; 902 NW2d 327 (2017).

As explained by this Court in *People v Dixon-Bey*, 321 Mich App 490, 520-521; 909 NW2d 458 (2017):

> In *Steanhouse*, the Michigan Supreme Court clarified that "the relevant question for appellate courts reviewing a sentence for reasonableness" is "whether the trial court abused its discretion by violating the principle of proportionality . . . ." [*Steanhouse*, 500 Mich at 471]. The principle of proportionality is one in which
>
> > "a judge helps to fulfill the overall legislative scheme of criminal punishment by taking care to assure that the sentences imposed across the discretionary range are proportionate to the seriousness of the matters that come before the court for sentencing. In making this assessment, the judge, of course, must take into account the nature of the offense and the background of the offender." [*Id.* at 472, quoting *People v Milbourn*, 435 Mich 630, 651; 461 NW2d 1 (1990).]
>
> Under this principle, " 'the key test is whether the sentence is proportionate to the seriousness of the matter, not whether it departs from or adheres to the guidelines' recommended range.' " *Steanhouse* 500 Mich at 472, quoting *Milbourn*, 435 Mich at 661.

The trial court sentenced defendant to a minimum term of 30 years in prison. Defendant was subject to a 25-year mandatory minimum sentence because he was convicted of CSC I against a victim "less than 13 years of age" while he was over 17 years of age, MCL 750.520b(2)(b). Thus, his 30-year sentence was a five-year departure.

This Court has explained that factors that may warrant a departure sentence under the principle of proportionality include the seriousness of the offense; the defendant's expressions of remorse; and the defendant's potential for rehabilitation. See *People v Steanhouse*, 322 Mich App 233, 238-239; 911 NW2d 253 (2017) (*Steanhouse II*).

Defendant argues that the trial court did not adequately articulate the reasons for its departure. However, the court's reasoning reflects the factors for departure discussed in *Steanhouse II*. The court reasoned that departure was warranted because of the seriousness of

defendant's offense, describing it as "the most striking" criminal-sexual-conduct case the court had ever presided over. The trial court also emphasized defendant's lack of remorse and his lack of potential for rehabilitation; the court pointed out that, after undergoing sex-offender therapy, defendant characterized his touching of the complainant as accidental and essentially called her a liar. Given this, the court discredited defendant's claim that he had benefited from "sexual classes and treatment." The trial court concluded, "In this case I'm satisfied that the appropriate purpose of this sentence is to protect the public from you. To also punish you for the conduct that you committed." Based on the trial court's reasoning, it clearly took into account the nature of the offense and the background of the offender. Thus, the court's sentence was reasonable, and it did not abuse its discretion by violating the principle of proportionality.

Affirmed.


/s/ David H. Sawyer
/s/ Colleen A. O'Brien
/s/ Anica Letica