# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
February 2, 2016

Plaintiff-Appellee,

v

No. 321243
St. Clair Circuit Court
LC No. 13-001935-FH

THOMAS JOSEPH AGAR,

Defendant-Appellant.

Before: RONAYNE KRAUSE, P.J., and GLEICHER and STEPHENS, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial convictions of distributing child sexually abusive material, MCL 750.145c(3), possessing child sexually abusive material (three counts), MCL 750.145c(4), using a computer to commit a crime, MCL 752.796; MCL 752.797(3)(d), and resisting and obstructing a police officer, MCL 750.81d(1). Defendant was sentenced to serve 18 months to 7 years for his convictions of distribution and use of a computer to commit a crime, 18 months to 4 years for each count of possession, and 1 to 2 years for resisting and obstructing a police officer, the sentences to be served concurrently. We vacate and remand for a new trial.

## I. BACKGROUND

Defendant's computer-related convictions arose out of his internet provider (IP) address being identified by Detective Eric Stevens as one possibly trading or sharing child pornography.

At defendant's preliminary examination, Detective Stevens testified as an expert in computer forensics to explain the Ephex software that he used to find defendant's IP address and the Shareaza software he believed defendant used to possess and share child pornography. After a second preliminary examination the defendant was bound over on all charges.

Pretrial, defendant filed a motion for the appointment of a forensic computer expert witness to rebut Detective Stevens, and investigate and support defendant's theories of how defendant could have inadvertently downloaded child pornography. Defense counsel and the court admitted to a lack of sophistication regarding computer issues in general. Defendant argued that the appointment of an expert witness was necessary to examine defendant's computer, prepare for trial and effectively rebut the testimony offered by the prosecution's expert Detective Stevens. Defendant identified Larry A. Dalman, a retired career state police officer, as

-1-

the expert he wanted to retain. Defendant stated that defendant was indigent and needed $1500.00 of public funds to retain Dalman.

The prosecution's position was that defendant had not shown a sufficient "nexus between the facts of the case and the need for an expert" as required by *People v Jacobsen*, 448 Mich 639, 641; 532 NW2d 838 (1995). Further, the prosecution argued that defendant only wanted an expert because the prosecution had one and to grant defendant's request would make all indigent requests for public funds for an expert automatically approved. The prosecution also asserted that defendant had not shown that any expert he retained would yield different results than Detective Stevens or that the detective's method was deficient.

The trial court denied defendant's motion for an expert. The court held that based on its review of the case law, there needed to be "a greater connection between the specifics of the issue that [were] involved in [defendant's] case and the need for an expert in order to get to the meat of the matter." The court identified that defendant was requesting an expert to show that in the process of copying the hard drives of others, defendant inadvertently copied child sexually abusive material to his own computer. The court found the theory plausible, but also that it was a fairly simple concept. The court held that an expert was not critically important to defendant's defense.

## II. ABUSE OF DISCRETION

Defendant first claims that the trial court abused its discretion in denying his request for public funds to retain his own computer forensics expert. We agree.

"This Court reviews for abuse of discretion a trial court's decision whether to grant an indigent defendant's motion for the appointment of an expert witness." *People v Carnicom*, 272 Mich App 614, 616; 727 NW2d 399 (2006), citing MCL 775.15. An abuse of discretion occurs when a trial court selects an outcome that is not within the range of reasonable and principled outcomes. *Id*. at 617.

MCL 775.15 authorizes a court to provide public funds for indigent defendants to retain expert witnesses. However, "[a] trial court is not compelled to provide funds for the appointment of an expert on demand." *Id*., citing *People v Tanner*, 469 Mich 437, 442; 671 NW2d 728 (2003). Under MCL 775.15, the defendant bears the burden of demonstrating that "there is a material witness in his favor within the jurisdiction of the court, without whose testimony he cannot safely proceed to a trial." *Id*. at 617. The first portion of defendant's burden is that, "[A] defendant must show a nexus between the facts of the case and the need for an expert." *Jacobsen*, 448 Mich at 641 (citation and quotation marks omitted). Defendant met that burden.

Before trial, defendant motioned the court for public funds for the appointment of a computer forensics expert. Defendant cited his need for an expert as three-fold: 1) to support his defense that the child sexually abusive material was inadvertently downloaded to his computer when, in the course of performing a repair, he copied another person's hard drive to his computer; 2) to support his defense that files containing child pornography could have been on his computer as the result of his unprotected and open wireless network; and 3) to explain that

the Shareaza program he copied was already programmed to share files and once downloaded onto his computer, resumed file-sharing. Detective Stevens' testimony was the centerpiece of both of the preliminary examinations and the trial. Much of the testimony from Detective Stevens involved the technical process for extracting the thumbnail fingerprints of child pornography from the defendant's computer and the process for initially identifying the IP address to which the files migrated. Additionally, in this case the defense was that the files were loaded at a time when the defendant did not have control of the computer. Even Detective Stevens was unable to identify when the files were loaded. Thus, the logical nexus is clear.

The prosecution also opposed the motion on the basis that defendant did not offer any evidence that the expert would yield any different results than its expert, Detective Stevens, and that the mere possibility that the expert may be of assistance to defendant was not enough to warrant appointment of an expert at public expense citing *Jacobsen, Carnicom, and Tanner*. We are troubled with the logic that a defendant who admits technical ignorance and who has no resources from which to acquire technical resources is asked to present evidence of what evidence an expert would offer in order to garner public funds to hire the expert. However, even assuming that these cases require some showing of what the expert would do to assist defendant, we find an abuse of discretion in this case because it is factually distinguishable from *Jacobsen*, *Tanner* and *Carnicom*.

In *Jacobsen*, the defendant requested public funds for the appointment of an expert to testify that, due to an unreasonable delay in conducting a Breathalyzer test, the results of the tests were unreliable. *Id*. at 640-641. The Court concluded that the "mere allegation that the delay was unreasonable" was not sufficient, without more, to warrant the appointment of an expert at public expense, noting that there was no indication that any circumstance existed that would call into question the results of the tests administered. *Id*. at 641-642. In this case, it was clear that even Detective Stevens could not pinpoint the timing of the downloads. Where this issue was crucial, additional testimony would have been of great significance.

In *Carnicom*, the defendant, believing "that his expert witness would be able to offer testimony that would explain the presence of methamphetamine in his bloodstream at the time of his arrest" based on his use of Adderall, requested public funds for the appointment of an expert toxicologist to perform independent testing of defendant's blood and present testimony at trial, but "did not make any indication or offer any evidence that expert testimony would likely benefit him." 272 Mich App at 617-618. "Besides [the] defendant's assertion, there was nothing before the trial court to suggest that Adderall could cause a false positive for methamphetamine" and the defendant did not claim that the expert would have benefited the defense. *Id.* at 618. This Court concluded, "[a]bsent an indication that the expert testimony would have likely benefited the defense, the trial court did not abuse its discretion in denying defendant's motion for appointment of an expert toxicologist." *Id.* at 619. In this case, counsel's admission that he needed help in understanding the technical issues at play supplies clear information that the defense would have benefited from an adequately educated counsel, even in the examination of the people's expert.

In *Tanner*, the Court upheld the trial court's denial of the appointment of a serology expert at public expense where the defendant failed to show that the expert would offer testimony that would "likely benefit the defense." 469 Mich at 443-444. Noting that the

defendant did not argue that an expert might refute the serology evidence, the Court concluded that the "mere possibility" that the appointment of an expert "might have provided some unidentified assistance to the defense . . . falls short of satisfying defendant's burden of showing that she could not safely proceed to trial without such expert assistance." *Id.* While the wise husbanding of public resources calls for careful examination of a request for public funds for an expert, this case is not one where the leap between the request and the likely benefit was spanned only by speculation.

Importantly, there are indications in the instant case that call into question the results administered by the prosecution's expert. It is noteworthy that a majority of Detective Stevens's evidence was retrieved from what he called unallocated space or a place where the items contents had been deleted but the name of the item still existed. While the actual video file was not retrievable, the jury was to infer that a file name was representative of the contents of the video. Detective Stevens' search of defendant's desktop hard drive produced deleted child pornographic thumbnail images and remnants of the names of deleted files. The thumbnails represented both boys and girls and the Detective Stevens found that an unusual preference, alluding that he would expect to find a user's preference to be one or the other. The prosecution's theory was that defendant downloaded the images and deleted them after viewing them. However, Detective Stevens could not testify based on his examination when the items were downloaded. In regards to some items, the entire file path to an exhibit was not displayed, which could have shown where an item originated. The detective also acknowledged that certain software was required to view AVI, MPG and MP4 files[1] and that he did not know whether defendant's computer possessed the software.

It is an abuse of discretion to refuse to appoint an expert when the defendant has presented information demonstrating that there is a connection between the facts of the case and the need for a defense expert. *In re Klevorn*, 185 Mich App 672, 679; 463 NW2d 175 (1990). The trial court's denial of defendant's motion for funds to retain an expert was based on its finding that transferring information from one hard drive to another in the process of repairing a computer was a "fairly simple concept." At the least, this was an oversimplification of the real issues in this case. At the most, the trial court's decision did not address defendant's full need for a defense expert and the tests delineated in MCL 775.15 or *Jacobsen*, 448 Mich at 641. The facts in this case were that some evidence of child pornography was on defendant's desktop and laptop computer and that there was further child abusive material available for defendant's IP address to download. The contested issues in this case were how the material came to be on defendant's computer and defendant's use of the Shareaza program to obtain and distribute the same.

In minimizing defendant's need for an expert, the prosecution argues that an expert would not have helped defendant when its forensic evidence overwhelmingly demonstrated defendant's guilt. The prosecution's presentation of an experienced expert witness who tends to inculpate defendant does not demonstrate, by itself, defendant's guilt. "Prosecution experts, of

---

[1] Detective Stevens recognized the extensions as meaning that the files were videos of some sort.

course, can sometimes make mistakes . . . [and] [s]erious deficiencies have been found in the forensic evidence used in criminal trials . . . This threat is minimized when the defense retains a competent expert to counter the testimony of the prosecution's expert witnesses[.]" *Hinton v Alabama*, ___ US ___, ___; 134 S Ct 1081, 1090; 188 L Ed 2d 1 (2014) (internal citations and quotation marks omitted). It was an abuse of discretion to deny the defendant access to an expert witness.

## III. DENIAL OF DUE PROCESS

Defendant next argues that he was denied his right to present a defense by the court's failure to appoint the requested expert. US Const, Am VI; Const 1963, art 1 § 20; *People v Adamski*, 198 Mich App 133, 138; 497 NW2d 546 (1993). Again, we agree. Whether a defendant has been denied the right to present a defense is a constitutional issue subject to de novo review. *People v Steele*, 283 Mich App 472, 480; 769 NW2d 256 (2009).

"Under the Due Process Clause, states may not condition the exercise of basic trial and appeal rights on a defendant's ability to pay for such rights." *People v Leonard*, 224 Mich App 569, 580; 569 NW2d 663 (1997). "[F]undamental fairness requires that the state not deny [defendants] an adequate opportunity to present their claims fairly within the adversary system." *Id*. at 580-581 (quotation marks and citations omitted). To prove that defendant's requested expert might have changed the outcome of the trial, defendant must show that the expert's testimony would have been favorable to his defense. *People v Ackerman*, 257 Mich App 434, 455; 669 NW2d 818 (2003). "A substantial defense is one that might have made a difference in the outcome of the trial." *People v Kelly*, 186 Mich App 524, 526; 465 NW2d 569 (1990).

Defendant's theory at trial was that certain files containing child sexually abusive material were inadvertently downloaded. He posited multiple sub-theories as to how that could have happened. Detective Stevens acknowledged that it was possible that if the Shareaza program was uninstalled and reinstalled elsewhere, it could continue prior searches and downloads on a new device. Detective Stevens also admitted that he did not know if the Shareaza program had an automatic feature to continue searches and downloads once it was reinstalled. The prosecution argues that a defense expert testifying on the same issues as Detective Stevens would be repetitious and a waste of judicial resources. That argument, in our view, is not in line with fundamental fairness. Regardless of the detective's candor, his admissions of "not knowing" leave us with the impression that there is room for expert debate in this case. The defense was left with counsel's argument as to the detective's admission of lack of information and to whether his expert conclusions supplied proof of guilt beyond a reasonable doubt.

"Had an impartial, scientifically trained expert corroborated the defendant's account . . . it would not have existed in a vacuum of his own self-interest." *People v Ackley*, 497 Mich 381, 397; 870 NW2d 858 (2015). The trial court's decision effectively denied defendant the expert testimonial support necessary to explain to the jury how defendant's theory was plausible. The fact-finder should have before it both the views of the prosecution and the defense, in order to competently "uncover, recognize, and take due account of ... shortcomings" in each party's respective theory. *Ake v Oklahoma*, 470 US 68, 84; 105 S Ct 1087; 84 L Ed 2d 53 (1985). "Without a[n] [expert's] assistance, the defendant cannot offer a well-informed expert's

opposing view, and thereby loses a significant opportunity to raise in the jurors' minds questions about the State's proof of an aggravating factor." *Id.* There was room to challenge Detective Stevens's testimony and admittedly, more to be learned about the operating capabilities of the Shareaza program. The denial of an expert prevented defendant from testing the conclusions reached by the prosecution's expert. It also hindered effective cross-examination. The record illustrated that counsel educated himself to the best of his abilities, but admittedly, he was not a computer forensic expert. "To make a reasoned judgment about whether evidence is worth presenting, one must know what it says." *Ackley*, 497 Mich at 393 citing *Couch v Booker*, 632 F3d 241, 246 (CA6 2011). We find that defendant's presentation of a defense was impaired in this case and that an expert might have changed the outcome of the trial.

## III. STANDARD 4 BRIEF

Defendant raises additional challenges to the sufficiency of the evidence to support his convictions and the effectiveness of trial counsel in his Standard 4 brief. In light of our foregoing conclusion that the trial court abused its discretion in refusing to provide defendant with public funds to retain an expert, we find it unnecessary to address defendant's in propia persona sufficiency of the evidence arguments as they relate to his convictions that required expert testimony, namely the distribution and possession of child sexually abusive material, and the use of a computer to commit a crime charges.

We address the remainder of defendant's in propia persona claims, below.

## A. SUFFICIENCY OF THE EVIDENCE

"A challenge to the sufficiency of the evidence is reviewed de novo." *People v Malone*, 287 Mich App 648, 654; 792 NW2d 7 (2010). "When reviewing a claim of insufficient evidence, this Court reviews the record in a light most favorable to the prosecution to determine whether a rational trier of fact could find that the essential elements of the crime were proven beyond a reasonable doubt." *Id.* " 'Circumstantial evidence and reasonable inferences arising from that evidence can constitute satisfactory proof of the elements of a crime.' " *People v Carines*, 460 Mich 750, 757; 597 NW2d 130 (1999), quoting *People v Allen*, 201 Mich App 98, 100; 505 NW2d 869 (1993). "This Court must not interfere with the jury's role as the sole judge of the facts when reviewing the evidence." *Malone*, 287 Mich App at 654. Accordingly, "[t]he reviewing court must draw all reasonable inferences and examine credibility issues in support of the jury verdict." *Id.*

### 1. OBSTRUCTING AND RESISTING A POLICE OFFICER

Defendant was convicted of violating MCL 750.81d(1), which provides that "an individual who assaults, batters, wounds, resists, obstructs, opposes, or endangers a person who the individual knows or has reason to know is performing his or her duties is guilty of a felony punishable by imprisonment for not more than 2 years or a fine of not more than $2,000.00, or both." The elements of resisting or obstructing are: "(1) the defendant assaulted, battered, wounded, resisted, obstructed, opposed, or endangered a police officer, and (2) the defendant knew or had reason to know that the person that the defendant assaulted, battered, wounded, resisted, obstructed, opposed, or endangered was a police officer performing his or her duties."

*People v Corr*, 287 Mich App 499, 503; 788 NW2d 860 (2010) (citations omitted); MCL 750.81d(1). "'Obstruct' includes the use or threatened use of physical interference or force or a knowing failure to comply with a lawful command." MCL 750.81d(7)(a).

Detective Stevens testified that, before entering defendant's home to execute the search warrant, he informed defendant that he was a detective with the St. Clair County Sherriff's Office and showed defendant his badge, explained that he was conducting an Internet investigation, and told defendant that he had a search warrant for defendant's computers and needed to enter the home to take his computers. From this testimony, a rational jury could conclude that defendant knew or had reason to know that Detective Stevens was a police officer performing his duties in execution of a search warrant. *Corr*, 287 Mich App at 503; *People v Nichols*, 262 Mich App 408, 414; 686 NW2d 502 (2004).

The testimony also sufficiently established that defendant obstructed and resisted Detective Stevens during the execution of the search warrant. *Corr*, 287 Mich App at 503. Testimony indicated that Detective Stevens explained to defendant that he needed to preserve the information on the computers as it existed at the time of the search, discussed in "extreme detail" that defendant could not turn on the computers, and "made it clear" that defendant was not to touch the computers. Despite Detective Stevens's commands not to touch the computers, the testimony of Stevens and other detectives present during the search indicated that, as defendant walked back into the living room after securing his dogs in the back bedroom, he went directly to the computer, bent down, and pushed the button to activate the computer, prompting Stevens to quickly "yank" the computer cord out from the back of the computer. Detective Titus testified that, as defendant moved directly toward the computer, Detective Stevens said, "I thought we had an understanding that you weren't going to touch that," but defendant did not stop moving toward the computer. Further, Detective Wade testified that he also saw defendant approaching the computer and heard Detective Stevens say, "Sir, I told you not to do that" or "I told you not to turn this on, sir." The detectives testified that defendant then began "flailing his arms around in [an] agitated state" and shouting and/or yelling at the officers to "Get the fuck out of my house." Detective Stevens grabbed defendant's shoulder and arm and pulled him "to make him stop doing what he was going to do" or "to get him away from the computer," and, as Stevens was "trying to get control of defendant," Stevens and defendant ended up colliding into a chair or tripping over a coffee table, falling over a chair that had flipped over, and landing on the ground with Stevens on top of defendant. Detective Stevens testified that defendant did not comply with his efforts to handcuff him and, after giving commands more than once, he eventually got defendant's hands out and placed them in handcuffs that Detective Wade handed to him. Further, Detectives Wade and Titus testified that defendant was "resisting," Detective Stevens was "struggling" as he attempted to handcuff defendant, there was screaming and yelling, and defendant was not compliant with Stevens's commands to put his hands behind his back or Stevens's efforts to handcuff him.

This testimony, viewed in a light most favorable to the prosecution, was sufficient for the jury to conclude that defendant engaged in conduct that hindered or obstructed the officers from executing the search the warrant, as well as resisted Detective Stevens during his attempt to arrest him. *Malone*, 287 Mich App at 654; *Corr*, 287 Mich App at 503. Although defendant claims that he assisted and facilitated Detective Stevens in his investigation and did not resist or obstruct the detectives, the detectives' testimony established otherwise. It was for the jury to

-7-

resolve issues of witness credibility and to weigh the evidence. *Malone*, 287 Mich App at 654. We must "draw all inferences and examine credibility issues in support of the jury verdict." *Id.* It is apparent from the verdict that the jury did not believe defendant's claim. "This Court must not interfere with the jury's role as the sole judge of the facts when reviewing the evidence." *Id.*

Further, while defendant correctly asserts that MCL 750.81d does not abrogate the common law right to resist unlawful police conduct, such as an unlawful arrest or other unlawful invasions of private rights, *People v Moreno*, 491 Mich 38, 48, 58; 814 NW2d 624 (2012), the record does not indicate that the search was unlawful. To the contrary, as discussed in the next section, testimony suggests that the search was lawful, conducted pursuant to a warrant supported by probable cause, and that the detectives acted within the scope of the warrant by entering the home and seizing defendant's computers pursuant to the warrant. *People v Stumpf*, 196 Mich App 218, 227; 492 NW2d 795 (1992); MCL 780.651(1). An individual does not have the right to resist or obstruct lawful actions of the police. *Moreno*, 491 Mich at 46-47.

## 2. UNLAWFUL SEARCH

Defendant next claims in propia persona that the officers' lack of compliance with MCL 780.655(1), by failing to provide him with a copy of the search warrant, resulted in an unlawful search justifying the exclusion of the computer evidence seized from his home. Defendant failed to preserve this issue for our review by moving to suppress the evidence seized in the search based on the validity of the search warrant process. *People v Snider*, 239 Mich App 393, 406; 608 NW2d 502 (2000). Thus, our review is limited to plain error that affected substantial rights. *Carines*, 460 Mich at 763.

The officers' failure to comply with MCL 780.655(1), which requires that officers conducting a search pursuant to a warrant give a copy of the search warrant to the person from whose premises property was taken or to leave a copy of the warrant at the premises searched, does not render the search illegal or warrant the exclusion of the evidence seized during the search. *People v Sobczak-Obetts*, 463 Mich 687, 708, 710; 625 NW2d 764 (2001). "The requirements of [MCL 780.655(1)] are ministerial in nature, and do not in any way lead to the acquisition of evidence; rather, these requirements come into play only *after* evidence has been seized pursuant to a valid search warrant." *Id.* at 710. Thus, "[b]ecause the exclusionary rule pertains to evidence that has been illegally *seized*, it would not be reasonable to conclude that the Legislature intended to apply the rule to a violation of the postseizure, administrative requirements of § 5." *Id.* Accordingly, the officers alleged failure to comply with MCL 780.655(1) does not, in and of itself, "render the warrant itself invalid, or the search unreasonable" to warrant the exclusion from evidence of the items seized during the search. *Id.* at 708, 710-712.

Moreover, the record suggests that the search was conducted pursuant to a warrant supported by probable cause. *Stumpf*, 196 Mich App at 227. The testimony regarding the officers' investigative efforts suggests that a substantial basis existed for inferring a fair probability that evidence of a crime existed at the place to be searched—i.e., computer equipment containing child sexually explicit material existed at defendant's home. *Malone*, 287 Mich App at 663. On this record, defendant has failed to demonstrate that the search was unlawful or that the computers were illegally seized. *Id.*; *Stumpf,* 196 Mich App at 227.

## B. INEFFECTIVE ASSISTANCE OF COUNSEL

Finally, defendant argues propia persona that he was denied the effective assistance of counsel. Defendant failed to preserve this claim by moving for a new trial or evidentiary hearing before the trial court. *Snider*, 239 Mich App at 423, citing *People v Ginther*, 390 Mich 436, 443; 212 NW2d 922 (1973). Thus, our Court's review is limited to mistakes apparent on the existing record. *Ginther*, 390 Mich at 443; *Snider*, 239 Mich App at 423. "To prove a claim of ineffective assistance of counsel, a defendant must establish that counsel's performance fell below objective standards of reasonableness and that, but for counsel's error, there is a reasonable probability that the result of the proceedings would have been different." *People v Swain*, 288 Mich App 609, 643; 794 NW2d 92 (2010) (citation omitted). "Effective assistance of counsel is presumed, and a defendant bears a heavy burden to prove otherwise." *Id*.

### 1. FAILURE TO SECURE AN EXPERT WITNESS AT PUBLIC EXPENSE

Defendant's primary claim of ineffective assistance is that his trial counsel allowed the trial to proceed without securing an expert at public expense to investigate the evidence and testify for the defense. "Criminal cases will arise where the only reasonable and available defense strategy requires consultation with experts or introduction of expert evidence." *Harrington v Richter*, 562 US 86, 10; 131 S Ct 770; 178 L Ed 2d 624 (2011). "[F]ailure to investigate adequately and to attempt to secure appropriate expert assistance in the preparation and presentation of [a] defense" constitutes ineffective assistance of counsel. *Ackley*, 497 Mich at 383. "[A] defense attorney may be deemed ineffective, in part, for failing to consult an expert when counsel had neither the education nor the experience necessary to evaluate the evidence and make for himself a reasonable, informed determination as to whether an expert should be consulted or called to the stand...." *People v Trakhtenberg*, 493 Mich 38, 54 n 9; 826 NW2d 136 (2012) (citations and quotation marks omitted).

The record indicates that defense counsel did recognize the need for an expert and did seek funds for one on defendant's behalf, but was denied by the trial court. Defendant was indigent and without the funds required to retain an expert. Defendant has not argued that there was an expert willing to testify pro bono that counsel failed to investigate. The record also evidences that counsel attempted to compensate for lack of an expert. Counsel's cross-examination of the prosecution's expert demonstrated that counsel investigated the type and operation of the software used. Counsel objected to computer-generated documents. Counsel sought to advance defendant's theory without expert support through defendant's own testimony and defense witnesses. On the record before us, we cannot conclude that it was counsel's failure that precluded that defense from obtaining an expert in its favor.

### 2. FAILURE TO INVESTIGATE WHETHER SEARCH WARRANT

### WAS LAWFULLY EXECUTED

Defendant next claims that defense counsel was ineffective by failing to investigate whether the search warrant was lawfully executed. A defense counsel has a duty to make reasonable investigations into his client's case. *Trakhtenberg*, 493 Mich at 52. The failure to

conduct an adequate investigation constitutes ineffective assistance if it undermines confidence in the outcome of the trial. *People v Russell*, 297 Mich App 707, 716; 825 NW2d 623 (2012).

Defendant claims that his trial counsel failed to investigate whether the search warrant was validly executed because the officers never provided him with a copy of the warrant. However, the mere fact that the officers did not give defendant a copy of the search warrant in violation of MCL 780.655(1) does not render the warrant invalid or the search illegal. *Sobczak-Obetts*, 463 Mich at 708-712. It is further evident from the trial testimony that Detective Stevens obtained a search warrant supported by probable cause that evidence of a crime existed in defendant's home. *Stumpf*, 196 Mich App at 227. Counsel was not required to file a frivolous or meritless motion, and thus, was not ineffective in failing to challenge the validity of the search. *People v Gist*, 188 Mich App 610, 612-613; 470 NW2d 475 (1991) (concluding that defense counsel was not ineffective for failing to file a suppression motion predicated on a defect in compliance with the search warrant procedures set forth in MCL 780.655(1) because such arguments would not serve to invalidate a search).

On this record, defendant has not demonstrated a reasonable probability that the outcome would have been different had his counsel investigated the validity of the warrant process, and thus, this claim of ineffective assistance fails. *Swain*, 288 Mich App 609.

## C. ADDITIONAL CLAIMS

Defendant also briefly claims that his trial counsel was ineffective by struggling to elicit key testimony from witnesses and failing to object to several inflammatory statements by the prosecutor. Defendant, however, fails to specify what testimony defense counsel failed to elicit or which inflammatory statements the prosecutor made that counsel did not object to or explain how these alleged instances of defective performance prejudiced him. "It is not enough for an appellant in his brief to simply announce a position or assert an error and then leave it up to this Court to discover and rationalize the basis for his claims, or unravel and elaborate for him his arguments." *People v Kevorkian*, 248 Mich App 373, 389; 639 NW2d 291 (2001). Additionally, a defendant claiming ineffective assistance bears the burden of demonstrating deficient performance and prejudice, and thus, bears the burden of establishing the factual predicate for his claim. *People v Carbin*, 463 Mich 590, 600; 623 NW2d 884 (2001); *Ackerman*, 257 Mich App at 455-456. Defendant's generalized allegations of defense counsel's deficient performance are not sufficient to sustain a claim of ineffective assistance of counsel.

Defendant also briefly claims that his counsel was ineffective for "barely" addressing the charge of resisting and obstructing a police officer. Defendant, however, fails to specify what additional information defense counsel should have elicited through questioning of the witnesses or brought out during his argument, and thus, has again failed to establish a factual predicate for this claim of ineffective assistance. *Carbin*, 463 Mich at 600. Regardless, it is apparent from a review of the record that defense counsel vigorously pursued and presented defendant's theory that he did not obstruct or resist Detective Stevens. Accordingly, defendant failed to establish that defense counsel's performance fell below an objective standard of reasonableness or that he was prejudiced by defense counsel's performance. *Swain*, 288 Mich App at 643.

Reversal of defendant's convictions is also not warranted on the basis of the cumulative effect of the alleged instances of ineffective assistance because defendant has not established any such instances. *People v Mayhew*, 236 Mich App 112, 128; 600 NW2d 370 (1999).

Defendant's convictions for distributing child abusive material, possessing sexually abusive material, and using a computer to commit a crime are vacated and as to these charges, the matter is remanded for a new trial. Defendant's conviction for resisting and obstructing is affirmed.

Vacated and remanded for a new trial. We do not retain jurisdiction.

/s/ Amy Ronayne Krause
/s/ Cynthia Diane Stephens