*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

       Plaintiff-Appellee,

v

BRANDI MARIE HULL,

       Defendant-Appellant.

UNPUBLISHED
February 1, 2022

No. 354667[1]
Tuscola Circuit Court
LC No. 19-015018-FH

PEOPLE OF THE STATE OF MICHIGAN,

       Plaintiff-Appellee,

v

ANTHONY RAY HULL,

       Defendant-Appellant.

No. 354735
Tuscola Circuit Court
LC No. 19-015020-FH

Before: CAVANAGH, P.J., and SHAPIRO and GADOLA, JJ.

PER CURIAM.

In Docket No. 354667, Brandi Marie Hull appeals as of right her jury trial conviction of assaulting, battering, resisting, obstructing, opposing a police officer (resisting and obstructing), MCL 750.81d(1). Brandi was sentenced to two days in jail for her resisting and obstructing conviction. On appeal, Brandi argues the trial court erred in finding there was sufficient evidence to convict her of resisting and obstructing a police officer, and that she was denied effective

---

[1] This Court consolidated Docket Nos. 354667 and 354735. *People v Hull*, unpublished order of the Court of Appeals, entered November 17, 2020 (Docket Nos. 354667 and 354735).

assistance of counsel because of trial counsel's failure to request a jury instruction regarding the right to resist an unlawful arrest. We affirm.

In Docket No. 354735, Anthony Ray Hull appeals as of right his jury trial conviction of resisting and obstructing a police officer, MCL 750.81d(1). Anthony was sentenced to 90 days in jail for his resisting and obstructing conviction. On appeal, Anthony argues the trial court erred in finding there was sufficient evidence to convict him of resisting and obstructing a police officer. In addition, Anthony argues the trial court abused its discretion by admitting irrelevant evidence, permitting the prosecutor to ask police officers for legal conclusions while precluding certain questions by his trial counsel, and permitting the prosecutor to pose argumentative questions. We affirm.

## I. FACTS AND PROCEDURAL HISTORY

This case arises from the execution of an arrest warrant for Brandi. On an evening in October 2019, Kingston Police Chief Albert Pearsall III went to defendants' residence to execute an arrest warrant for "Brandi Schook." Before arriving at the residence, Chief Pearsall contacted central dispatch, which confirmed the arrest warrant was valid using the Law Enforcement Information Network (LEIN). Because Chief Pearsall did not have a physical copy of the arrest warrant, central dispatch also provided additional information to Chief Pearsall, including Brandi Schook's date of birth and that the reason for the warrant was a violation for excessive noise or a loud exhaust. When Chief Pearsall arrived at the residence, he was in full uniform, with a fully-marked police vehicle. Chief Pearsall also had an individual, Jay Petrica, with him, who was observing Chief Pearsall as a ride-along.

After first approaching the front door of the house, Chief Pearsall went to a side door that led to a wooden porch, while Petrica remained at the front door. Brandi then emerged from the front door and Chief Pearsall returned from the side door and identified himself. Brandi recognized Chief Pearsall as a police officer from seeing him at her job as a convenience store clerk. Once Chief Pearsall identified himself as a police officer Brandi stated, "I know who you are." Chief Pearsall told Brandi he had an arrest warrant for her for excessive noise, which Brandi denied, stating she had never been stopped on such a charge. Brandi also initially denied that her name was Brandi Schook, but later clarified she recently married Anthony, changing her name from Brandi Schook to Brandi Hull.

At this point the front door again opened and Anthony emerged from the house. Brandi told Anthony about the warrant for her arrest, and Anthony told Chief Pearsall that he was on "private property" and told Brandi to go back into the house. While Brandi stood between Anthony and Chief Pearsall, attempting to deescalate the situation, Chief Pearsall grabbed Brandi's arm because he did not want to "lose custody of the prisoner," and Anthony grabbed Brandi's other arm. Pearsall testified at trial that he was worried that Brandi and Anthony might have access to firearms in the house, especially considering that he was the only officer present, and additional police officers were 10 minutes away. Chief Pearsall told Anthony to stop, and that he had an arrest warrant for Brandi; however, Anthony pushed Brandi into the house, went into the house himself, and closed the front door. As the front door closed, Chief Pearsall attempted to stop the door from closing, wedging his boot in the doorway. After damaging the doorframe, the front

-2-

door closed, knocking Chief Pearsall backward, and Chief Pearsall and Petrica retreated to the police vehicle.

Shortly thereafter, Michigan State Police Trooper Dan Reynolds, Trooper Jason Baxter, Trooper Tyler Schuiteman, Trooper Michael Jarosiewicz, and Tuscola County Sheriff's Deputy Ryan LaFlure arrived at the scene. Trooper Reynolds and Deputy LaFlure each verified the arrest warrant was valid in LEIN. After about 20 minutes, Brandi and Anthony came out of the house. Trooper Reynolds testified that Brandi was "verbally defiant," "argumentative," and would not listen to the police officers' commands, insisting she did not have a warrant. Trooper Reynolds obtained a copy of the warrant from LEIN and showed it to Brandi, explaining the arrest warrant "was titled excessive noise, but in the remarks it was failure to appear to a [driving while license suspended] charge." Brandi "agreed to finally cooperate," however, Trooper Reynolds "almost had to pick her up and carry her" to the police vehicle. Brandi continued to argue whether the information in the warrant was correct.

Brandi and Anthony were tried together. Sheila Long, a court administrator for the Tuscola County courts, testified when a warrant is entered into LEIN, a four-digit number, which corresponds with count I in a complaint, is required to specify certain offenses. For a reason unknown to Long, a blanket code is used for certain charges and displayed, in LEIN, as an excessive noise or loud exhaust charge. Long stated a warrant clerk will typically include additional information regarding the charges, including the MCL statutes charged to the individual, in the remarks section of the warrant. Brandi testified, admitting she recognized Chief Pearsall as a police officer at the time of the incident. Brandi stated that when she and Anthony went back into the house, Anthony called 911 to request additional information and for additional officers to come to the house. At the time of the incident, Brandi did not know why there was an arrest warrant and disagreed with Chief Pearsall, believing it to be a mistake, and asked the police officers to see the warrant while she was being handcuffed. Brandi also testified regarding her previous citations, stating before the incident, in April 2018, she was pulled over by a Tuscola County Sheriff's Deputy Christopher Whetstone and given a citation for driving while license suspended (DWLS), MCL 257.904, no proof of insurance, MCL 500.3102, and a broken taillight. The next day, Brandi learned her driver's license was suspended because she failed to pay a driver's responsibility fine from a prior citation in another county, which she paid to reinstate her driver's license. In June 2019, Brandi received a letter instructing her to go to the Tuscola County Police Department for fingerprinting. Brandi reported to the police department and was instructed to go to the Tuscola County Magistrate's Office. An unidentified employee told Brandi that she failed to take care of her April 2018 citation but if she paid the fines, it would be resolved. Later that week, Anthony paid the outstanding fines on Brandi's behalf and received a receipt. In September 2019, Brandi was scheduled for an arraignment regarding her DWLS and no insurance charges but failed to appear, resulting in a warrant being entered into the LEIN. Brandi admitted she never went to the Tuscola County courthouse and pleaded to the charges on her April 2018 citation, stating when she received a letter in August 2019 about the charges, she called the courthouse and told an individual that she had taken care of it. However, the register of actions regarding the April 2018 citation did not indicate a telephone call from Brandi. Brandi stated she had no knowledge of a DWLS charge, but if Chief Pearsall said the arrest warrant was for DWLS she would have shown her receipt.

Anthony testified, admitting that Chief Pearsall said he had an arrest warrant for Brandi, but denying he knew Chief Pearsall was a police officer. Anthony did not believe the arrest warrant for excessive noise or loud exhaust was valid, leading him to push Brandi into the house. However, Anthony stated if he knew the warrant was for Brandi's DWLS charge, he would have reacted differently. Anthony further stated he never touched Chief Pearsall, or slammed the front door shut on Chief Pearsall, during the incident.

After the presentation of the evidence, and during jury deliberations, the jury submitted several questions to the trial court, including (1) "[i]f being arrested, do you have to be told what the warrant is for at the time of the arrest[;]" (2) "[a]re there reasonable exceptions for resisting under duress[;]" (3) "[i]s there a legal definition of opposed similar to how obstruct is defined in our instructions[;]" and (4) "[w]hat happens if we cannot reach a mutual verdict?" To each of these questions, the trial court answered, and the parties agreed, "[y]ou must rely on the jury instructions on the law which were provided to you . . . and the definitions provided to you in the jury instructions." Additionally, the trial court gave an additional deadlock jury instruction, stating to the jury that Brandi and Anthony had their own verdict form and emphasizing that each juror should "seriously consider the views of your fellow jurors[,]" express "the facts and the reasons" for their views to each other, and consider submitting "a written list of the issues that are dividing or confusing" that the trial court could attempt to clarify to assist in further deliberations.

The jury found Brandi and Anthony guilty of the resisting and obstructing charges. Defendants moved for a new trial, filing separate but identical motions, arguing they were denied a fair trial because the prosecutor failed to provide a copy of the excessive noise or exhaust warrant, which the prosecutor relied on to convict Brandi. In response, the prosecutor argued defendants continue to misunderstand the LEIN system, stating the witness testimony established the arrest warrant indicated excessive noise or loud exhaust, but the remarks section on the warrant indicated the true nature of the warrant. Because defendants were provided a copy of the warrant before trial, defendants failed to establish their burden of proof that any evidence was withheld.

The trial court denied defendants' motions for new trial, stating the record was "clear that there was only ONE warrant in this case for Brandi Hull's arrest and that said warrant was for the misdemeanor charges of [DWLS]" and defendants failed to show a miscarriage of justice or any other legal basis for granting a new trial. Accordingly, the trial court sentenced defendants as indicated above.

## II. ANALYSIS

The trial court did not err in finding sufficient evidence for the jury to convict defendants of resisting and obstructing a police officer. In addition, Brandi was not denied effective assistance of counsel for trial counsel's failure to request a jury instruction regarding the right to resist an unlawful arrest. Further, the trial court did not abuse its discretion by admitting evidence or testimony regarding the register of actions for Brandi's prior citation, permitting the prosecutor to ask police officers questions regarding the incident while precluding certain questions by trial counsel, and permitting the prosecutor's questions during Brandi's cross-examination.

## A. SUFFICIENCY OF THE EVIDENCE

Defendants argue the trial court erred in finding there was sufficient evidence to convict each of them of resisting and obstructing a police officer. We disagree.

"A challenge to the sufficiency of the evidence in a jury trial is reviewed de novo, viewing the evidence in the light most favorable to the prosecution, to determine whether the trier of fact could have found that the essential elements of the crime were proved beyond a reasonable doubt." *People v Gaines*, 306 Mich App 289, 296; 856 NW2d 222 (2014). This Court "must defer to the fact-finder by drawing all reasonable inferences and resolving credibility conflicts in support of the jury verdict." *People v Schumacher*, 276 Mich App 165, 167; 740 NW2d 534 (2007).

"Due process requires that the evidence show guilt beyond a reasonable doubt in order to sustain a conviction." *People v Unger*, 278 Mich App 210, 222; 749 NW2d 272 (2008). Under MCL 750.81d(1):

> [A]n individual who assaults, batters, wounds, resists, obstructs, opposes, or endangers a person who the individual knows or has reason to know is performing his or her duties is guilty of a felony punishable by imprisonment for not more than 2 years or a fine of not more than $2,000.00, or both. [MCL 750.81d(1).]

"Obstruct" is statutorily-defined to include "the use or threatened use of physical interference or force or a knowing failure to comply with a lawful command." MCL 750.81d(7)(a). "Resist is defined as to withstand, strive against, or oppose." *People v Morris*, 314 Mich App 399, 408; 886 NW2d 910 (2016) (quotation marks and citation omitted). "Oppose is defined as to act against or furnish resistance to; combat." *Id.* (Quotation marks and citation omitted). "A battery is the willful and harmful or offensive touching of another person which results from an act intended to cause such a contact." *Id.* at 410 (quotation marks and citation omitted). Moreover, a "person" includes "[a] police officer in this state or a political subdivision of this state[.]" MCL 750.81d(7)(b)(*i*). Accordingly, to establish resisting and obstructing a police officer, the prosecution must establish, beyond a reasonable doubt:

> (1) the defendant assaulted, battered, wounded, resisted, obstructed, opposed, or endangered a police officer, and (2) the defendant knew or had reason to know that the person that the defendant assaulted, battered, wounded, resisted, obstructed, opposed, or endangered was a police officer performing his or her duties. [*Morris*, 314 Mich App at 413-414 (quotation marks and citation omitted).]

### 1. BRANDI HULL

The trial court did not err in finding there was sufficient evidence for the jury to convict Brandi of resisting and obstructing a police officer. A review of the record indicates Chief Pearsall arrived in uniform in a fully-marked police vehicle, informed Brandi he was a police officer, and explained that he had a warrant for her arrest. From his testimony, a rational jury could conclude that Brandi had reason to know that Chief Pearsall was a police officer performing his duties in execution of an arrest warrant. *Morris*, 314 Mich App at 414. In fact, Brandi admitted she recognized Chief Pearsall as a police officer, at the time of the incident, from a previous occasion when Chief Pearsall came to her place of employment.

The testimony also sufficiently established that Brandi resisted and obstructed Chief Pearsall during the execution of the arrest warrant. A review of the testimony and body-camera footage indicates that after she was informed there was a warrant for her arrest, Brandi denied a warrant existed and insisted that she had never been stopped for excessive noise or loud exhaust. After the exchange between Anthony and Chief Pearsall, Brandi went back into the house, despite Chief Pearsall's instruction to stop, his attempt to physically stop her from entering the house, and his repeated statement that he had a warrant for her arrest, which could be resolved by coming with him and paying $500 to get out of jail. After coming out of the house, Brandi continued to be verbally defiant toward the responding police officers and requested to see a copy of the arrest warrant. Even after Trooper Reynolds showed her the warrant, Brandi continued to be argumentative, insisted the warrant information was incorrect, and "almost had to [be] pick[ed] [up] and [carried] to the patrol car."

Brandi primarily contends that Chief Pearsall made a mistake in arresting her on a warrant for a crime she did not commit. Because the arrest was made on an invalid warrant, Brandi argues Chief Pearsall's commands were unlawful and justified her resistance. While Brandi correctly asserts that our Supreme Court recognizes a common-law right to resist unlawful police conduct, the record does not indicate the arrest warrant was unlawful. *People v Moreno*, 491 Mich 38, 51-52; 814 NW2d 624 (2012). Rather, Chief Pearsall, Trooper Reynolds, and Deputy LaFlure independently verified the arrest warrant was valid in LEIN at the time of the incident. Moreover, Long testified about the validity of the arrest warrant. Because the arresting police officer is entitled to rely on LEIN information as a basis for an arrest, Chief Pearsall's attempted execution of a valid arrest warrant was lawful. *People v Freeman*, 240 Mich App 235, 236-237; 612 NW2d 824 (2000).

Regardless, Brandi argues Chief Pearsall's miscommunication of the reason for her arrest justified her resistance. However, Brandi's opinion that the arrest warrant was a mistake or invalid was not relevant to whether she resisted and obstructed a police officer. Instead, the resisting and obstructing statute defines "obstruct," in part, as "the use or threatened use of physical interference or force *or a knowing failure to comply with a lawful command*." MCL 750. 81d(7)(a) (emphasis added). Brandi's reasons for not complying, i.e., she already paid her fines, never had an excessive noise or exhaust citation, was unaware of the outstanding DWLS charge, did not know Petrica, and was worried Chief Pearsall and Petrica would harm her, did not serve to refute that she knew she was not complying with Chief Pearsall's orders by arguing and retreating to the house. Moreover, under MCL 764.18, when an arrest is made under a warrant, it is not necessary for the arresting officer to physically "have the warrant in his possession but such officer must, if possible, inform the arrested person that there is a warrant for his arrest and, after the arrest is made, shall show such person said warrant if required, as soon as practicable." MCL 764.18; see also *People v Agar*, 314 Mich App 636, 656; 887 NW2d 662 (2016) (noting the mere fact that an officer did not give the defendant a copy of the warrant did not render the warrant invalid). Accordingly, because Chief Pearsall reasonably relied on LEIN information as the basis for the arrest warrant and repeatedly informed Brandi that he had a warrant for her arrest, Chief Pearsall's conduct was lawful and did not give rise to a right to resist arrest. Moreover, even after Brandi was given the opportunity to see the arrest warrant, she continued to be argumentative, insisted the warrant information was incorrect, and resisted arrest.

Further, Brandi argues if Chief Pearsall had accurately advised her of the reason for her arrest, she would have complied with the arrest without incident. However, this argument is speculative. In fact, Brandi's testimony suggests that her behavior would not have changed. Specifically, Brandi stated if Chief Pearsall told her the arrest warrant was for the DWLS charge, she "would have told them that I have a receipt for that, and I would have walked in the house and got it." While Brandi contends this represents her compliance with lawful commands, Brandi fails to recognize her obstructive behavior in arguing with a police officer, who was executing a valid arrest warrant. A defendant does not have the right to resist or obstruct lawful actions of the police. *Moreno*, 491 Mich at 46-47. Because Brandi knew Chief Pearsall was a police officer, was informed there was a warrant for her arrest, and lacked a sufficient reason to believe Chief Pearsall was not lawfully performing his duties, there was sufficient evidence to support Brandi's conviction.

We also note Brandi's brief insinuation that the jury's questions during deliberations demonstrates they were struggling to determine whether Chief Pearsall acted lawfully in his attempt to arrest Brandi. However, the fact that a "jury asked questions during deliberations is not necessarily indicative of jury compromise." *People v Moorer*, 246 Mich App 680, 683 n 1; 635 NW2d 47 (2001) (citation omitted). A review of the jury's questions to the trial court establishes that the jury was seeking greater clarification of the applicable law, which is not indicative of a compromise, but rather shows that the jury wished to faithfully undertake its obligation. Additionally, the trial court specifically instructed the jury not to compromise the views of individual jurors to reach a verdict. A jury is presumed to follow its instructions. *People v Graves*, 458 Mich 476, 486; 581 NW2d 229 (1998).

Viewed in a light most favorable to the prosecution, the evidence was sufficient for the jury to conclude that Brandi engaged in conduct that hindered or obstructed Chief Pearsall from executing the arrest warrant and resisted Chief Pearsall during his execution of the arrest warrant. *People v Corr*, 287 Mich App 499, 503; 788 NW2d 860 (2010). As discussed, although Brandi claims she was not resisting or arguing with the police officers, but merely asking why she was being taken to jail, the police officers' testimony established otherwise. "It was for the jury to resolve issues of witness credibility and to weigh the evidence." *Agar*, 314 Mich App at 652. As a result, all reasonable inferences and credibility issues must be viewed in support of the jury verdict. *Id*. On this basis, it was apparent from the verdict that the jury believed Brandi knowingly defied Chief Pearsall's lawful execution of a valid arrest warrant by resisting and obstructing the arrest. *Morris*, 314 Mich App at 413-414. As a result, "[t]his Court must not interfere with the jury's role as the sole judge of the facts when reviewing the evidence." *Agar*, 314 Mich App at 652.

## 2. ANTHONY HULL

The trial court did not err in concluding there was sufficient evidence for the jury to convict Anthony of resisting and obstructing a police officer. A review of the record indicates that Chief Pearsall told Anthony he had a warrant for Brandi's arrest, and told Brandi about the arrest warrant in Anthony's presence. In fact, Anthony admitted that Chief Pearsall said he was there with a warrant to arrest Brandi. Moreover, despite Anthony's contention that he did not know Chief Pearsall to be a "true officer," Chief Pearsall was in full uniform, which Anthony admitted he saw, and drove a fully-marked police vehicle. From this evidence, a rational jury could conclude that

Anthony had reason to know that Chief Pearsall was a police officer performing his duties in execution of an arrest warrant. *Morris*, 314 Mich App at 414.

The testimony also sufficiently established that Anthony resisted and obstructed Chief Pearsall during the execution of the arrest warrant. A review of the testimony and body-camera footage indicates that Anthony became very upset when he came out of the house, told Chief Pearsall he was on private property, and told Brandi to go back into the house. As Anthony pushed Brandi back into the house, Chief Pearsall told Anthony to stop and grabbed Brandi's other arm to prevent losing custody of her. After Brandi was in the house, Anthony quickly closed the front door, pushing it closed against Chief Pearsall's attempt to keep it open. A reasonable inference could be made that Anthony used force to prevent Chief Pearsall from executing the valid arrest warrant. MCL 750.81d(7)(a). Additionally, while Anthony denied removing Chief Pearsall's hand from Brandi's arm and wedging Chief Pearsall's boot between the front door and doorframe as Anthony tried to close it, such contact also could have constituted a battery for purposes of the resisting and obstructing charge. *Morris*, 314 Mich App at 410.

Anthony primarily contends that Chief Pearsall was engaged in an unlawful action when he attempted to arrest Brandi. Because Chief Pearsall did not have a copy of the arrest warrant when he attempted the arrest, nor accurately communicate the reason for the warrant, Anthony argues he had a common-law right to resist and defend Brandi. While Anthony correctly asserts that our Supreme Court recognizes a common-law right to resist unlawful police conduct, the record does not indicate the arrest was unlawful because the warrant was valid. *Moreno*, 491 Mich at 51-52. Rather, Chief Pearsall, Trooper Reynolds, and Deputy LaFlure independently verified the arrest warrant was valid in LEIN at the time of arrest. Because an arresting police officer is entitled to rely on LEIN information as a basis for an arrest, Chief Pearsall's attempted execution of a valid arrest warrant was lawful. *Freeman*, 240 Mich App at 236-237.

In addition, contrary to Anthony's argument, when an arrest is made under a warrant, it is not necessary for the arresting officer personally to have the warrant in his or her possession. MCL 764.18; see also *Agar*, 314 Mich App at 656 (noting the mere fact that an officer did not give the defendant a copy of the warrant did not render the warrant invalid). In fact, Trooper Reynolds and Deputy LaFlure stated it was not common practice to carry a physical copy of the warrant during execution. Accordingly, the fact that Chief Pearsall did not have a physical copy of the arrest warrant at the time of the incident did not render Chief's Pearsall's conduct unlawful.

Moreover, Anthony contends he had a right to defend Brandi against Chief Pearsall. We note Anthony also asserted this argument at trial, requesting a jury instruction for the defense of others. However, the trial court rejected the instruction, stating "the issue of what's lawful is whether it was a lawful arrest or an otherwise lawful act by the officer[,]" and not in the first instance whether Anthony's conduct was lawful. A claim of "defense of others first requires that a defendant has acted in response to an assault." *Detroit v Smith*, 235 Mich App 235, 238; 597 NW2d 247 (1999).[2] "An arrest can be an assault if the arrest is illegal." *Id*. As stated, the evidence

---

[2] A valid defense of others defense requires: (1) the defendant honestly and reasonably believed there was danger; (2) the danger amounted to serious bodily harm or death; (3) the defendant's

established that Chief Pearsall reasonably relied on the LEIN information as the basis for the arrest. *Freeman*, 240 Mich App at 236-237. Because Chief Pearsall's execution of the arrest warrant was lawful, there was no assault to give rise to Anthony's right to defend Brandi. *Smith*, 235 Mich App at 238.

Further, Anthony contends if Chief Pearsall had explained the proper basis for the arrest warrant, there would not have been an incident. However, this argument is speculative. Despite Anthony's testimony that if Chief Pearsall said the arrest warrant was for the DWLS charge, it would have "changed his mind," Anthony also stated, "I would have showed them the receipt that I had because I did take care of it to the best of my knowledge and ability." While Anthony contends this demonstrates his compliance with lawful commands, Anthony fails to recognize his obstructive behavior in arguing with a police officer and preventing the police officer from executing a valid arrest warrant. A defendant does not have the right to resist or obstruct lawful actions of the police. *Moreno*, 491 Mich at 46-47. Because Anthony knew, or had reason to know, Chief Pearsall was a police officer, was informed there was a warrant for Brandi's arrest, and lacked a sufficient reason to believe Chief Pearsall was not lawfully performing his duties, there was sufficient evidence to support Anthony's conviction.

Viewed in a light most favorable to the prosecution, the evidence was sufficient for the jury to conclude that Anthony engaged in conduct that hindered or obstructed Chief Pearsall in executing the arrest warrant. *Corr*, 287 Mich App at 503. Although Anthony claims he was merely defending Brandi from Chief Pearsall's unlawful arrest, no such right was available during a lawful arrest. "It was for the jury to resolve issues of witness credibility and to weigh the evidence." *Agar*, 314 Mich App at 652. As a result, all reasonable inferences and credibility issues must be viewed in support of the jury verdict. *Id.* It was apparent from the verdict that the jury believed Anthony knowingly obstructed Chief Pearsall's lawful execution of a valid arrest warrant. *Morris*, 314 Mich App at 413-414. As a result, "[t]his Court must not interfere with the jury's role as the sole judge of the facts when reviewing the evidence." *Agar*, 314 Mich App at 652.

## B. INEFFECTIVE ASSISTANCE OF COUNSEL

Brandi argues she was denied the effective assistance of counsel by trial counsel's failure to request a jury instruction stating she had a right to resist an unlawful arrest. We disagree.

A claim of ineffective assistance of counsel must be raised below in a motion for a new trial or an evidentiary hearing. *People v Ginther*, 390 Mich 436, 443; 212 NW2d 922 (1973); *People v Snider*, 239 Mich App 393, 423; 608 NW2d 502 (2000). Brandi first raised the issue of ineffective assistance of counsel in her brief on appeal. Because Brandi raised the issue of ineffective assistance of counsel for the first time on appeal, it is unpreserved for appellate review.

The determination whether a defendant has been deprived the effective assistance of counsel presents a mixed question of fact and law. *People v LeBlanc*, 465 Mich 575, 579; 640

---

actions at the time were reasonably necessary for self-defense or defense of others; and (4) the defendant was not the initial aggressor. MCL 780.972; *People v Riddle*, 467 Mich 116, 120 n 8; 649 NW2d 30 (2002).

NW2d 246 (2002). The trial court's factual findings are generally reviewed for clear error, while its constitutional determinations are reviewed de novo. *Id*. However, because defendant's claim of ineffective assistance of counsel is unpreserved, this Court's "review is limited to errors apparent on the record." *Unger*, 278 Mich App at 253.

Effective assistance of counsel is presumed and a defendant bears a heavy burden to prove otherwise. *People v Rockey*, 237 Mich App 74, 76; 601 NW2d 887 (1999). To establish ineffective assistance of counsel, a defendant must show that counsel's performance fell below an objective standard of reasonableness, and that the representation so prejudiced defendant that he or she was denied the right to a fair trial. *People v Pickens*, 446 Mich 298, 338; 521 NW2d 797 (1994). To establish prejudice, defendant must show a reasonable probability that, but for counsel's error, the result of the proceeding would have been different. *People v Johnson*, 451 Mich 115, 124; 545 NW2d 637 (1996). Defendant must overcome the strong presumption that counsel's actions constituted sound trial strategy under the circumstances. *People v Toma*, 462 Mich 281, 302; 613 NW2d 694 (2000). The proper "inquiry is not whether a defendant's case might conceivably have been advanced by alternate means[.]" *LeBlanc*, 465 Mich at 582. This Court is generally required to give trial counsel the benefit of the doubt with this presumption and to affirmatively entertain the range of possible reasons that trial counsel may have had for proceeding as they did. *People v Gioglio*, 296 Mich App 12, 22; 815 NW2d 589 (2012). "Accordingly, a reviewing court must conclude that the act or omission of the defendant's trial counsel fell within the range of reasonable professional conduct if, after affirmatively entertaining the range of possible reasons for the act or omission under the facts known to the reviewing court, there might have been a legitimate strategic reason for the act or omission." *Id*. at 22-23. "Failing to request a particular jury instruction can be a matter of trial strategy." *People v Dunigan*, 299 Mich App 579, 584; 831 NW2d 243 (2013).

Brandi was not denied the effective assistance of counsel by trial counsel's failure to request a jury instruction regarding the right to resist an unlawful arrest. While trial counsel alleged Chief Pearsall's arrest was unlawful because the warrant was invalid, the evidence clearly established there was a lawful arrest. As a result, there was no basis to instruct the jury on a right to resist an unlawful arrest. Regardless, we note trial counsel did request an instruction for self-defense because of "the argument from the defense . . . that there was a—a legal right to resist." The trial court rejected the instruction, stating "the issue of what's lawful is whether it was a lawful arrest or an otherwise lawful act by the officer[,]" and not whether Brandi's conduct was lawful.

Even to the extent a specific instruction on resisting an unlawful arrest should have been requested, there is no reasonable probability the result of Brandi's trial would have been different. The trial court instructed the jury that to find Brandi guilty of resisting and obstructing a police officer, the jury was required to find Chief Pearsall gave Brandi "a lawful command, was making a lawful arrest, or was otherwise performing a lawful act." Accordingly, to convict Brandi, the jury had to conclude that Chief Pearsall acted lawfully. This conclusion would have undercut the unlawful arrest element of Brandi's proposed instruction. Because the jury necessarily determined that Brandi did not have the right to resist Chief Pearsall's lawful commands, or the execution of the valid arrest warrant, Brandi suffered no prejudice from her trial counsel's failure to request the jury instruction on resisting an unlawful arrest.

In addition, Brandi briefly argues trial counsel should have requested an instruction that Chief Pearsall had a duty to properly inform an arrestee of the reason for an arrest. As stated, an arresting officer is generally not required to personally possess a copy of an arrest warrant when executing the warrant, "but such officer must, if possible, inform the person arrested that there is a warrant for his arrest" and show the person the warrant "as soon as practicable." MCL 764.18. There does not appear to be any authority for Brandi's contention that there is a duty to properly inform an arrestee of the reason for an arrest. In fact, the case Brandi relies on, *Drennan v People*, 10 Mich 169 (1862), only suggests that an arresting officer inform an arrestee "of the facts, or at least the offense for which he arrested him." *Id*. at 177. On this basis, Brandi has failed to establish that a duty to properly inform an arrestee of the reason for an arrest exists to allow such an instruction.

## C. ABUSE OF DISCRETION

Anthony argues the trial court abused its discretion by admitting irrelevant evidence, permitting the prosecutor to ask police officers for legal conclusions while precluding certain questions by his trial counsel, and permitting the prosecutor to pose argumentative questions. We disagree.

"Preserved evidentiary rulings are reviewed for an abuse of discretion." *Unger*, 278 Mich App at 216. A trial court abuses its discretion "when the court chooses an outcome that falls outside the range of reasonable and principled outcomes." *Id.* at 217. Anthony first argues the trial court erred by admitting any evidence regarding the court clerk's register of actions concerning the April 2018 citation. Specifically, Anthony argues Brandi's testimony that she called the court clerk to look up her DWLS charge was inadmissible to impeach Brandi because the prosecutor did not provide the necessary foundation to establish that every telephone call to the court clerk's office was noted in the register of actions. MRE 901 requires that before evidence can be introduced, it must be authenticated or identified by "[t]estimony that a matter is what it is claimed to be." MRE 901(b)(1). Before the register of actions was introduced into evidence, Long identified the documents as district court records for "no proof of registration, unsigned registration, on a 2018 civil infraction ticket" for Brandi. On the basis of Long's testimony, a proper foundation was laid for the introduction of the register of actions for Brandi's April 2018 citation.

While Long did not testify regarding the procedure for recording telephone calls from parties in the register of actions, there is also no record of the prosecutor's attempt to impeach Brandi's testimony in contravention of the rules of evidence during trial. During Brandi's cross-examination, the prosecutor asked "if the Register of Actions doesn't show [Brandi's telephone call to the court clerk's office], you wouldn't dispute what was in the Register of Actions, would you?" Shortly thereafter, the prosecutor restated, "You wouldn't disagree if the Register of Actions doesn't show any of that conversation taking place?" MRE 613 provides:

> (a) . . . In examining a witness concerning a prior statement made by the witness, whether written or not, the statement need not be shown nor its contents disclosed to the witness at that time, but on request it shall be shown or disclosed to opposing counsel and the witness.

(b) . . . Extrinsic evidence of a prior inconsistent statement by a witness is not admissible unless the witness is afforded an opportunity to explain or deny the same and the opposite party is afforded an opportunity to interrogate the witness thereon, or the interests of justice otherwise require. [MRE 613.]

Moreover, MRE 609 provides:

(a) . . . For the purpose of attacking the credibility of a witness, evidence that the witness has been convicted of a crime shall not be admitted unless the evidence has been elicited from the witness or established by public record during cross-examination, and

> (1) the crime contained an element of dishonesty or false statement, or

> (2) the crime contained an element of theft . . . . [MRE 609(a).]

Because there is no record of the prosecutor's attempt to impeach Brandi by a prior inconsistent statement or a prior conviction, the prosecutor was not required to lay any additional foundation for the questions regarding Brandi's alleged telephone calls to the courthouse. By this line of questioning, the prosecutor merely asked whether Brandi would agree or disagree that the properly admitted register of actions does not reflect the telephone call she claims she made to the court clerk's office. Asking Brandi about the contents of the document was proper under the applicable rules of evidence.

Regardless, even to the extent the trial court erred in permitting the prosecutor to question Brandi regarding the register of actions, any such error was harmless. "[A] preserved, nonconstitutional error is not a ground for reversal unless after an examination of the entire cause, it shall affirmatively appear that it is more probable than not that the error was outcome determinative." *People v Lukity*, 460 Mich 484, 496; 596 NW2d 607 (1999) (quotation marks omitted). "An error is outcome determinative if it undermined the reliability of the verdict; in making this determination, this Court . . . focus[es] on the nature of the error in light of the weight and strength of the untainted evidence." *People v Feezel*, 486 Mich 184, 192; 783 NW2d 67 (2010). Beyond the prosecutor's two questions during Brandi's cross-examination, this evidence was largely insignificant to the issues at trial and did not appear to have any bearing on the jury's verdict for Anthony's resisting and obstructing charge. As a result, Anthony was not entitled to a new trial on this basis.

Next, Anthony argues the trial court erred in permitting the prosecutor to ask police officers for legal conclusions regarding whether the arrest warrant was valid, while precluding his trial counsel from asking the police officers if a citizen is permitted to resist an unlawful arrest. MRE 701 addresses the admissibility of opinion testimony by lay witnesses:

If the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue. [MRE 701.]

Because a nonexpert witness's testimony is limited to those opinions, legal conclusions that are not grounded in the witness's perception are not admissible. *People v Daniel*, 207 Mich App 47, 57; 523 NW2d 830 (1994). In support of his argument, Anthony contends the prosecutor inappropriately asked Chief Pearsall whether "[t]here was a valid warrant that night," which central dispatch described as a warrant for excessive noise. However, because the prosecutor was asking Chief Pearsall about his perception of the validity of the arrest warrant based on his conversation with central dispatch, it is clear that Chief Pearsall's "opinion" was a factual conclusion, rather than a legal conclusion. Anthony also contends the trial court inappropriately precluded Anthony's counsel from asking whether (1) Chief Pearsall believed "if you are doing something incorrectly as a police officer, a person does not have the right to resist you[,]" (2) Trooper Reynolds believed it was an illegal arrest "if you were to just arrest somebody on a made-up crime," and (3) Trooper Reynolds agreed "that if you tell a person you are arresting them for something they know they didn't do, it's reasonable for them to dispute what you're telling them?" Unlike the prosecutor's questions, trial counsel's questions posed hypotheticals to lay witnesses, asking for their opinions on police procedure and analysis of the law. Because the police officers' responses could not be grounded on their own perception of the incident, trial counsel was improperly asking for their legal conclusions, which is not permitted under MRE 701. As a result, Anthony was not entitled to a new trial on this basis.

Further, Anthony argues the trial court erred in permitting the prosecutor to ask Brandi argumentative questions about the incident. In support of his argument, Anthony points to the prosecutor's questions during the following portion of Brandi's cross-examination, including (1) "[y]ou decided that you would I guess contest [Chief Pearsall] right there on the porch rather than coming with him, fair to say[;]" (2) "[a]nd you thought that was the best outcome when an officer tells you that he has a valid warrant for your arrest[;]" (3) "[s]o you felt it was the best course of conduct to—to I guess resist going with him on this warrant as opposed to just—even though he told you he had a valid warrant for your arrest[;]" and (4) "[s]o rather than sort all of that out after you went down to the station or to the jail, you thought it was best to argue with him and resist him right there on the porch?" However, "[p]rosecutors are typically afforded great latitude regarding their arguments and conduct at trial." *Unger*, 278 Mich App at 236. "The prosecutor is entitled to attempt to introduce evidence that he legitimately believes will be accepted by the court, as long as that attempt does not prejudice the defendant." *People v Noble*, 238 Mich App 647, 660-661; 608 NW2d 123 (1999). On this basis, the prosecutor's questions cannot be considered argumentative because they were directly relevant to the lawful conduct issue at trial. Moreover, at no point did the prosecutor's questions arise to harassment or badgering. Regardless, even to the extent the prosecutor's questions were argumentative, Anthony's contention that because it was a "very short trial," it is more probable than not that the erroneous admission was outcome-determinative is merely speculative. In fact, we fail to see how the prosecutor's questions to a codefendant about her own opinions would entitle Anthony to a new trial.

Affirmed.

/s/ Mark J. Cavanagh
/s/ Michael F. Gadola